## STATE OF CONNECTICUT *v.* ROGER B.*
### (SC 18367)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.**

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

** The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued April 22—officially released July 27, 2010

*Daniel J. Krisch*, special public defender, with whom was *Brendon P. Levesque*, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *David Shepack*, state's

attorney, and *James Fletcher*, senior assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Roger B., appeals[1] from the trial court's judgment of conviction, following a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A) and three counts of risk of injury to a child in violation of General Statutes § 53-21 (2).[2] On appeal, the defendant argues that his constitutional right to due process was violated by the four and one-half year delay between the completion of the investigation into the allegations of sexual abuse and the application for an arrest warrant by the police because the delay was unjustifiable and caused him actual substantial prejudice. The defendant also argues that the trial court improperly instructed the jury regarding the basis for its findings in evaluating witness credibility in violation of his constitutional right to a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 1995, the defendant lived with his girlfriend, J.T., and her three children; two girls, S and J, and one boy, K. S was eight years old and J was four years old.[3] There were two bedrooms on the first floor of the house. S and J shared a bedroom, as did the defendant, J.T.

[1] The defendant appealed from the trial court's judgment to the Appellate Court, and we granted the defendant's motion to transfer the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[2] The conduct charged in this case occurred on various dates between October, 1995 and February, 2000. Although §§ 53a-70, 53a-73a and 53-21 have been amended since that time, those amendments are not relevant to the merits of this appeal. For convenience, we refer to the current revision of each statute.

[3] At the time of trial, which occurred in 2008, S was twenty-one years old and J was sixteen years old.

and K. The living room and kitchen were located on the second floor. Almost nightly, the defendant would wake up S and take her upstairs to the living room, where he would sexually assault her.[4]

In May, 1996, the defendant, J.T. and her children and the defendant's mother moved to a new house. The kitchen, living room and S's bedroom were on the first floor of the house. There were three bedrooms on the second floor. The defendant and J.T. shared one bedroom, and J and K shared another. The defendant's mother also slept on the second floor. In the new house, the defendant would wake up J and take her to the living room or to his bedroom and sexually assault her.[5]

In the fall of 1999, J.T. entered a psychiatric ward. S, J and K lived with the defendant, who was their sole caretaker[6] until representatives from the department of children and families (department) removed the children because the defendant was not a relative. In February, 2000, the department placed J in a foster home. The department subsequently placed S in the same foster home. A few months after living in the foster home, S told her boyfriend that she had been abused by the defendant. S later told her foster mother and her therapist that the defendant had abused her. When J also told her foster mother that the defendant had abused her, the foster mother reported the allegations to the department.

Following a two day trial, the jury returned verdicts of guilty on all six counts. On April 18, 2008, the trial court sentenced the defendant to a total effective term of twenty-nine years incarceration, execution sus-

---

[4] The defendant would touch S's breast and vaginal area and rub his penis on her until he "urinated." The defendant would also instruct S to put her mouth on his penis, which she would do until he "urinated" in her mouth.

[5] The defendant would touch J's breasts and vaginal area.

[6] The defendant's mother had moved to Florida.

pended after twenty-three years, with thirty years of probation. This appeal followed.

I

The defendant first claims that the delay of approximately four and one-half years between the completion of the investigation by the police into the claims by S and J that they had been sexually abused by the defendant and the application for a warrant for his arrest violated his constitutional right to due process pursuant to the fourteenth amendment to the United States constitution.[7] The defendant argues that he suffered actual substantial prejudice as a result of this delay because it denied him the opportunity to investigate the allegations made by S and J while the memories of the alleged abuse were fresh in their minds. The defendant further claims that the delay was unjustifiable because it was caused without any reasonable explanation by the police officer handling the investigation. The state contends that this unpreserved claim is not reviewable because the record is not adequate for our review. The state also argues that, if we review the defendant's claim, the defendant cannot prevail because the record fails to identify the purported reason for the delay and further fails to show that the defendant suffered actual prejudice. Additionally, the state argues that even if the defendant could identify the reason for the delay or show actual prejudice, he cannot prevail on his due process claim because he has not established that the state acted with the bad faith intention to use the delay to undermine his defense at trial. We agree with the

[7] The defendant also raises a due process claim pursuant to article first, § 8, of the constitution of Connecticut. Because the defendant has not set forth a separate analysis of his claim under the state constitution or asserted that our state constitution affords him greater protections with regard to his claim than its federal counterpart, we confine our analysis to the defendant's federal constitutional claim. See, e.g., *State* v. *Ortiz*, 280 Conn. 686, 689 n.2, 911 A.2d 1055 (2006).

state that the record is inadequate for review of the defendant's due process claim because it contains no evidence demonstrating that the defendant suffered actual prejudice as a result of the delay.

The record reveals the following additional facts relevant to this claim. On July 7, 2000, the department reported the alleged sexual abuse of S and J by the defendant to the New Milford police department. As part of the investigation into the allegations, Detective James Mullin of the New Milford police department watched a forensic interview of S and J.[8] On August 31, 2000, Mullin took a written statement from the defendant in which he denied abusing S and J. The defendant gave the police permission to search his apartment and storage unit. Mullin continued the investigation in January, 2001, when he spoke with the foster mother as well as S's boyfriend. Although the investigation took place years earlier, Mullin did not obtain a warrant for the defendant's arrest until July 6, 2005. On the same date, the state charged the defendant with one count of sexual assault in the first degree, two counts of sexual assault in the fourth degree, and two counts of risk of injury to a child.[9] The defendant was arrested two years later in Indiana.

At trial, during cross-examination, defense counsel asked Mullin why the warrant was not drawn up until 2005. Mullin responded, "Because that's when it was drawn up." Mullin also testified, in response to questions by defense counsel, that no other evidence or statements relating to the investigation were uncovered between 2000 and 2005, and that the warrant was drawn up on the basis of "the forensic interviews and the

---

[8] S and J were interviewed by a child abuse investigation team.

[9] The state subsequently filed a long form information on January 4, 2008, followed by an amended long form information on January 9, 2008. The state later filed a second amended long form information on January 18, 2008, to conform to evidence presented by the state at trial.

original statements."[10] On redirect examination, the prosecutor asked whether the recommendations with regard to J's welfare, which were contained in a report generated by the child abuse investigation team, influenced Mullin's "decision as to how to proceed with the investigation." Mullin responded, "Yes." Defense counsel then asked, on recross-examination, whether there was "a recommendation that [the police] not pursue the case for five years." Mullin responded that there was not.

Because the defendant's claim is unpreserved, he seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), which provides that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following condi-

---

[10] The following exchange occurred on cross-examination:

"[Defense Counsel]: And you didn't seek a warrant until nearly five years later; is that right? Summer of 2005?

"[Mullin]: That's correct. . . .

"[Defense Counsel]: I mean, you didn't prepare an arrest warrant until 2005; is that right?"

"[Mullin]: I would say right around there, yes.

* * *

"[Defense Counsel]: So were you stymied in trying to find [the defendant] for seven years? I mean, is there a reason why he wasn't arrested? I think you testified that he wasn't arrested until 2007.

"[Mullin]: Because the warrant wasn't drawn up until 2005.

"[Defense Counsel]: Why wasn't it drawn up until 2005?

"[Mullin]: Because that's when it was drawn up.

"[Defense Counsel]: Okay. Were there other events or incidents between 2000 and 2005 that played a part in the eventual warrant, if you know?

"[Mullin]: What do you mean by that?

"[Defense Counsel]: Well, other evidence or statements or anything pertaining to [the defendant] that were uncovered during that five year span?

"[Mullin]: No.

"[Defense Counsel]: The warrant is basically based on those tapes that you talked about, those forensic interviews and the original statements; is that right?

"[Mullin]: Yes.

"[Defense Counsel]: Okay. And so but the warrant wasn't drawn up for five years again why? Because it wasn't.

"[Mullin]: Right."

tions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Brewer*, 283 Conn. 352, 358, 927 A.2d 825 (2007). Under the first prong of *Golding*, "[t]he defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." *State* v. *Golding*, supra, 240.

In the present case, the defendant claims that the state violated his right to due process by waiting more than four years after the completion of its investigation to seek a warrant for his arrest. "[T]o establish a due process violation because of pre-accusation delay, the defendant must show both that actual substantial prejudice resulted from the delay *and* that the reasons for the delay were wholly unjustifiable, as where the state seeks to gain a tactical advantage over the defendant. . . . [P]roof of prejudice is generally a necessary but not sufficient element of a due process claim . . . . [Additionally] the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Morrill*, 197 Conn.

507, 522, 498 A.2d 76 (1985), citing *United States* v. *Marion*, 404 U.S. 307, 322, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971).

Although the record in this case lacks any justifiable reason for the delay, the record is also devoid of facts regarding whether and to what extent the defendant suffered actual prejudice as a result of the delay. The defendant posits that, because he was convicted solely on the words of his two accusers, the four and one-half year delay deprived him of the opportunity to find witnesses to challenge the credibility of S and J and to have his own expert examine S and J at the time of their accusations. There is, however, no testimony or other evidence, nor factual findings by the trial court, indicating that the defendant attempted to locate witnesses and was unsuccessful in doing so. Nor has the defendant established that an independent examination of S and J would have been permitted. The record simply does not contain a sufficient underlying set of facts for us to assess whether the defendant suffered actual prejudice as a result of Mullin's delay in seeking an arrest warrant. See *State* v. *Hampton*, 293 Conn. 435, 441–44, 978 A.2d 1089 (2009) (record inadequate to review claim that detective incorrectly advised defendant regarding *Miranda*[11] rights where record did not contain factual findings regarding alleged incorrect statement or impact statement may have had on defendant's understanding of *Miranda* rights).

The defendant argues that the record is adequate for review because Mullin was questioned by defense counsel regarding the reasons for the delay and was given the opportunity, on numerous occasions, to explain why he waited until July, 2005, to seek an arrest warrant. We agree that Mullin's testimony offers no

---

[11] *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

reason for the delay. Indeed, he expressly declined to offer any reason or justification for the delay.[12] Mullin's testimony does not, however, remedy the void in the record with regard to whether the defendant suffered actual prejudice as a result of the delay—a hurdle the defendant must overcome to succeed in his due process claim. *State* v. *Littlejohn*, 199 Conn. 631, 646, 508 A.2d 1376 (1986). Accordingly, we conclude that the record is inadequate for review of the defendant's claim and that it therefore fails the first prong of *Golding*.

II

The defendant next claims that the court improperly instructed the jury that it "must not base [its] findings as to whether or not a particular fact has been proved on the number of witnesses who testified in support of or against it . . . . Quality counts. Quantity does not." Specifically, the defendant claims that the instruction improperly prohibited the jury from considering a relevant factor in its evaluation of witness credibility in violation of his constitutional right to a fair trial pursuant to the fourteenth amendment to the United States constitution.[13] The defendant further maintains that there is a reasonable possibility that the challenged instruction misled the jury and that, because credibility was a central issue at trial, the state cannot establish that the instruction was harmless. The state argues that the defendant is not entitled to *Golding* review because the challenged instruction involves the jury's assess-

[12] Although we are mindful that because the defendant did not raise his due process claim at trial, the state did not have the opportunity to present evidence regarding the justification for the delay, and are mindful that it is the defendant's burden to present evidence that the delay was wholly unjustifiable, we note that the state has given no reason whatsoever for the four and one-half year delay.

[13] The defendant also invokes the protections of article first, § 8, of the constitution of Connecticut. Because he does not provide a separate analysis of his claim under the state constitution, we limit our review to his federal constitutional claim. See footnote 7 of this opinion.

ment of credibility and, therefore, is not of constitutional dimension. The state also argues that the instruction, when taken as a whole, properly guided the jury regarding its assessment of the combined value of the testimony of multiple witnesses as well as the credibility of an individual witness.

The defendant acknowledges that he did not object to the challenged instruction at trial and, accordingly, he seeks review under *State* v. *Golding*, supra, 213 Conn. 233, and the plain error doctrine. See Practice Book § 60-5. The defendant has satisfied the first prong of *Golding* because the record is adequate for our review.[14] *State* v. *Golding*, supra, 239. Turning to the second prong of *Golding*, which requires that the claim is of constitutional dimension; id.; we examine the challenged instruction, which reads as follows: "[Y]ou must not base findings as to whether or not a particular fact has been proved on the number of witnesses who testified in support of or against it, the length of their testimony, or the quantity of other evidence presented with respect to it. Quality counts. Quantity does not."

It is well established that not every claim of instructional error is truly of constitutional dimension. *State* v. *LaBrec*, 270 Conn. 548, 557, 854 A.2d 1 (2004). As we have recognized repeatedly, "an instructional error relating to general principles of witness credibility is not constitutional in nature." *State* v. *Patterson*, 276 Conn. 452, 471, 886 A.2d 777 (2005); cf. *State* v. *Coltherst*, 263 Conn. 478, 505, 820 A.2d 1024 (2003) (claim that court's specific credibility instruction regarding letter written by defendant was improper is constitutional in nature). "Indeed, it would trivialize the constitution to transmute a nonconstitutional claim into a

---

[14] Citing *State* v. *Ebron*, 292 Conn. 656, 677–82, 975 A.2d 17 (2009), the state appears to concede that the defendant did not waive his instructional claim at trial. The state does not provide a separate argument in support of waiver.

constitutional claim simply because of the label placed on it by a party or because of a strained connection between it and a fundamental constitutional right." (Internal quotation marks omitted.) *State* v. *LaBrec*, supra, 557. Because the challenged instruction concerns general principles regarding the jury's assessment of witness credibility, the defendant cannot satisfy the second prong of *Golding* and, therefore, we do not review his unpreserved claim.

The defendant also seeks review of his instructional claim under the plain error doctrine. See Practice Book § 60-5. The plain error doctrine is a rule of reversibility "reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Cutler*, 293 Conn. 303, 326, 977 A.2d 209 (2009). "That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . [Thus, an appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Moore*, 293 Conn. 781, 823, 981 A.2d 1030 (2009), cert. denied, 560 U.S. 954, 130 S. Ct. 3386, 177 L. Ed. 2d 306 (2010).

"[A] defendant is entitled to have the jury correctly and adequately instructed on the pertinent principles of substantive law." (Internal quotation marks omitted.) *State* v. *Singleton*, 292 Conn. 734, 768, 974 A.2d 679 (2009). Nonetheless, "[the] instructions need not be perfect, as long as they are legally correct, adapted to the issues and sufficient for the jury's guidance."

(Internal quotation marks omitted.) Id., 769. In the present case, the court instructed the jury correctly, on numerous occasions, regarding its assessment of witness credibility. The court instructed, for example, that the jury could choose in its "sole discretion, to believe all, some, or none of what any witness has said in this case." The court instructed the jury as to the factors that it could consider in making such a determination, including the witness' ability to recall and describe things, the witness' demeanor while testifying and whether the witness had any interest in the outcome of the trial.[15] The court also correctly instructed the

[15] The trial court's instruction provided in relevant part: "In deciding the factual issues of this case, you must consider all of the properly admitted evidence. In so doing, you must decide which testimony to believe and which testimony not to believe. You may believe and credit all, part, or none of any witness' testimony. In making that decision, you may take many factors into account. They include: One, was the witness able to see, or hear, or know the things about which he or she testified? Number two, how well was the witness able to recall and describe those things? Number three, what was the witness' manner while testifying? Four, does the witness have any interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case? The greater the witness' personal interest in the outcome of the case the more closely and carefully you should scrutinize his or her testimony before crediting it for any purpose. [Five] [h]ow reasonable was the witness' testimony considered in light of all of the other evidence in this case? And six, was the witness' testimony contradicted by what he or she said or did at another time or by the testimony of other witnesses or by other evidence?

"If you think that a witness has deliberately testified falsely in some respect, you must carefully consider whether or not to rely upon his or her testimony. However, bear in mind that people sometimes forget things and sometimes get confused for reasons that have nothing to do with dishonesty. Therefore, you should attempt to determine whether any apparent contradiction in a witness' testimony or recollection may have resulted from an innocent lapse of memory rather than intentional falsehood, and that, in turn, may depend on many factors, including whether it has to do with an important fact or an insignificant detail.

"These are some of the factors you may consider in deciding whether or not to believe the testimony of any witness who's come before you in this case. Based upon your consideration of those factors and others you routinely rely upon to assess the credibility of people that you interact with in your daily lives, you may choose, in your sole discretion, to believe all, some, or none of what any witness has said in this case."

jury regarding police testimony, constancy of accusation testimony and expert testimony.[16]

We have recognized as comprehensive a general credibility instruction that "[i]t is the quality, not the quan-

[16] The trial court's instruction provided in relevant part: "One police officer testified in this case. Testimony of a police officer is entitled to no special or exclusive weight merely because it comes from a police officer. Instead, you should give it the same consideration and apply to it the same factors as you would apply to the testimony of any other witness, including: The officer's demeanor on the witness stand, his manner of testifying, any bias he showed or any interest he may have shown in the outcome of the case, and the consistency and completeness of his testimony. The decision whether or not to credit the testimony of a police officer, and if so, what weight to give it in the circumstances of the case is entirely up to you, just as it is for every other witness in the case. In short, you should not believe a police officer's testimony or disbelieve, in whole or in part, merely because it came from a police officer.

"In this case one witness, the . . . foster mother, testified that before [S and J] first reported the defendant's alleged sexual assaults upon them to the police, each of them separately disclosed such sexual assaults to her in such a way as to identify at least the general nature of the alleged assaults and the identity of the defendant as the person who allegedly perpetrated them. Such statements were not introduced to prove the truth of their contents but only for the limited purpose of corroborating [their] trial testimony by proving that [S and J] first disclosed the instance described in their testimony at the time and in the manner indicated by the witness. . . .

"In this case one witness came before you and testified to certain specialized knowledge she claimed to have based upon her experience, training, and education in the field of child sexual abuse. Such witnesses are referred to as expert witnesses.

"You are not bound by the testimony of an expert witness. Instead, such witnesses come before you on exactly the same footing as every other witness in the case. In weighing the testimony of an expert witness you should start by applying the same test for truthfulness that you would apply to any other witness. Matters to be considered in assessing an expert witness' credibility may thus include, as with all witnesses, her appearance on the witness stand, the logic and consistency of her testimony, any possible bias, prejudice, or interest in the outcome of the case that may color her testimony, and any other factors that routinely affect your assessment of a person's truthfulness with conducting the affairs of your lives. You should also consider the basis upon which the witness claims to have acquired this specialized knowledge to which she has testified, asking yourselves whether the asserted basis for such knowledge, as explained to you at trial, is sufficiently complete and reliable to justify relying upon it in deciding the issues before you in this case.

"In sum, expert testimony is presented to assist you in your deliberations. However, no such testimony is binding upon you, and thus, you may disregard it in whole or in part and give it whatever weight you feel it deserves in light of all of the other evidence in this case."

tity, of the testimony which should be controlling." (Internal quotation marks omitted.) *State* v. *Bell*, 283 Conn. 748, 783, 931 A.2d 198 (2007); D. Borden & L. Orland, 5 Connecticut Practice Series: Criminal Jury Instructions (4th Ed. 2007) § 3.2, p. 126. The challenged instruction in this instance does not, therefore, deviate substantially from the proper instruction. Moreover, the defendant has not demonstrated that the challenged instruction raises an error so clear and harmful that manifest injustice will result if the judgment is not reversed, or that his claim implicates the fairness, integrity of and public confidence in judicial proceedings. We therefore conclude that this case does not present the extraordinary situation required for the exercise of our authority under the plain error doctrine.

The judgment is affirmed.

In this opinion the other justices concurred.