******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* MATTHEW M. PUGH
## (AC 40402)

Keller, Bright and Flynn, Js.

*Syllabus*

Convicted of the crimes of robbery in the first degree, assault in the first degree and carrying a pistol or revolver without a permit in connection with the shooting and robbery of the victim, the defendant appealed to this court. He claimed, inter alia, that the trial court improperly denied his motion to dismiss the charges, in which he alleged that his right to due process was violated because of a twenty-three month delay between the time that the crimes at issue were committed and the date of his arrest. The defendant had approached the victim on a street, took a shoulder bag that she was carrying, which contained her credit cards, and shot her before running down the street with the bag. Thereafter, the defendant drove several of his acquaintances to stores where purchases were made using one of the victim's credit cards. The victim, and two witnesses, A and M, all gave the police similar descriptions of the defendant, and M identified him in court and from a photographic array shown to her by the police. The trial court found that the twenty-three month delay in the defendant's arrest had occurred because of a gap in the police department's assignment of robbery cases after the department eliminated its robbery division and transferred the investigating detectives to other duties. *Held*:

1. The evidence of the defendant's identity was sufficient to support his conviction of the charges, as the jury reasonably could have concluded from the evidence presented that the defendant was the perpetrator of the shooting and robbery; the victim, A and M gave similar descriptions of the perpetrator to the police in close proximity in time and location to the events at issue, in which they identified him as a medium complexioned black male who wore a cap or a do-rag as he ran down the street carrying a bag, in light of M's testimony that she got a good look at the defendant when he went past her while carrying a woman's handbag, which occurred in close proximity in time and location to the attack on the victim, it was reasonable for the jury to infer that M saw the man who shot the victim, one of the defendant's acquaintances identified him as the individual who drove her to the stores where the victim's credit cards were used, and although there were differences in the witnesses' physical descriptions of the defendant, it was the function of the fact finder to assess credibility.

2. The defendant could not prevail on his claim that the trial court violated his right to due process when it denied his motion to dismiss the charges, as he could not show actual, substantial prejudice from the twenty-three month delay between the time that the crimes were committed and the date of his arrest: the defendant was unable to show, in the absence of the delay, that he would have been able to obtain his employment records, which he claimed would have demonstrated that he was at work during the time that the crimes took place, as he presented no evidence regarding record retention by the agency that kept his employer's records, the instances of faded memories of witnesses cited by the defendant did not establish actual, substantial prejudice, as there was sufficient evidentiary support for the trial court's finding that it was not likely that a manager at the defendant's workplace would have remembered if one particular employee out of approximately one hundred worked on the night of the crimes at issue, and the testimony of the defendant's girlfriend was of limited value, given her close connection to him; moreover, the defendant failed to show that, in the absence of the delay, certain information pertaining to his cell phone number would have been available at trial to show that he had called his girlfriend more than four hours after the crimes took place, as a representative of the cell phone company did not verify at trial that the cell phone number used by the defendant was from her company or that there existed for that number cell site information, which merely discloses the location of the nearest cell tower with the strongest signal from the

cell phone, and the trial court found that even if the cell phone information existed, it would have done little to support the defendant's claim that he was not in the vicinity of the robbery and shooting at the time it occurred.

3. The defendant's claim that the trial court committed plain error by giving the jury a consciousness of guilt instruction regarding a letter he wrote to his girlfriend while in custody was unavailing: the instruction did not improperly bolster an insufficient case, as the evidence was sufficient to permit the jury to find the defendant guilty beyond a reasonable doubt, the letter supported a reasonable inference that the defendant attempted to influence a witness to lie, which supported an inference that he was guilty of assaulting the victim and stealing her credit cards, it was for the jury to infer whether the letter referred to an acquaintance of the defendant who was in the car that the defendant drove to the stores where the victim's credit cards were used and, thus, whether the letter was highly probative of and supported a reasonable inference as to whether the defendant tampered with a witness who could testify as to his presence when the victim's credit cards were used, and the possibility that the letter could be subject to innocent interpretations was not enough to render the instruction improper; moreover, the court balanced the consciousness of guilt instruction by summarizing the defendant's explanations for writing the letter, the instruction allowed the jury to draw a permissive inference of the defendant's guilt without an expression of opinion as to what inference, if any, might be drawn, and the instruction did not undermine the integrity or fairness of the proceeding.

Argued March 18—officially released June 25, 2019

*Procedural History*

Substitute information charging the defendant with the crimes of robbery in the first degree, assault in the first degree, carrying a pistol or revolver without a permit and tampering with a witness, brought to the Superior Court in the judicial district of New Haven and tried to the jury before *Alander, J.*; verdict of guilty; thereafter, the court granted the defendant's motion for a judgment of acquittal as to the charge of tampering with a witness, and denied the defendant's motion to dismiss the charges of robbery in the first degree, assault in the first degree and carrying a pistol or revolver without a permit; judgment of guilty of robbery in the first degree, assault in the first degree and carrying a pistol or revolver without a permit, from which the defendant appealed to this court. *Affirmed.*

*Shanna P. Hugle*, with whom was *James B. Streeto*, senior assistant public defender, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *John M. Waddock*, former supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Matthew M. Pugh, appeals from the judgment of conviction, rendered following a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), assault in the first degree in violation of General Statutes § 53a-59 (a) (5), and carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a). On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction on each of these charges, (2) the trial court improperly denied his motion to dismiss in which he contended that his right to due process was violated by a preaccusation delay, and (3) the court abused its discretion in giving any consciousness of guilt instruction and committed plain error in giving the actual instruction in this case. We disagree with the first claim and conclude that the evidence sufficed to permit a reasonable jury to find the defendant guilty of all charges. We further conclude that the defendant has failed to show the requisite actual, substantial prejudice to establish a due process violation resulting from the preaccusation delay. Finally, the court did not err by giving a consciousness of guilt instruction because such an instruction is permissible under our law and the evidence supported the giving of such an instruction in this case. We affirm the judgment of the trial court.

The jury was presented with the following evidence upon which to base its verdict. On August 21, 2008, at approximately 8 p.m., while Tatiana Grigorenko was walking on Edwards Street near the corner of Nicoll Street in New Haven, she noticed the defendant acting in a strange manner. On her right shoulder, Grigorenko had a shoulder bag, which contained her wallet, cash, credit cards, cell phone, keys, and other personal items. She felt someone tug on her shoulder bag. The defendant "swerved" in front of Grigorenko, pointed a gun at her, and told her several times to give him the bag. The defendant shot Grigorenko, striking her right thumb. Grigorenko released her bag, and the defendant ran down Nicoll Street carrying the bag. Grigorenko, who was in pain, began screaming. Grigorenko was not able to identify the defendant, but described her assailant as a black male, with a medium complexion, who was wearing a do-rag on his head and was "slightly" taller than her height of five feet, four and one-half inches, in addition to some added height as a result of her wearing "a little bit of heels . . . ."

At approximately 8 p.m. that same evening, while Stephanie Aquila was inside her house, which was located on the corner of Lawrence and Nicoll Streets in New Haven, she heard what she initially thought to be fireworks followed by screaming coming from the direction of Edwards Street. She looked out the window and saw a young, black, medium complexioned male, approximately five feet six inches tall, who was wearing

dark loose fitting clothing and either a black baseball cap or a do-rag. The man was carrying a purse under his right arm and running down Nicoll Street from the direction of Edwards Street toward Lawrence Street. Aquila was unable to identify the runner from a photographic array that she was later shown by the police.

At approximately 8 p.m. on that same evening, Kristine Mingo was in the passenger seat of a vehicle that was traveling on Nicoll Street. Mingo's vehicle stopped at the corner of Nicoll Street and Lawrence Street, and she saw a man carrying a woman's handbag in his right hand, running on Nicoll Street toward her vehicle from the direction of Edwards Street. Mingo saw the man run past her vehicle and then turn onto Lawrence Street. Mingo's vehicle followed the man as he headed down Lawrence Street in the direction of Foster Street. Mingo described the individual as a young, medium complexioned black male between five feet five, and five feet seven inches tall, who was wearing a loose dark shirt, baggy pants, and a do-rag on his head. While Mingo's vehicle was stopped at the intersection of Lawrence and Foster Streets, the man "brushed against the front of the car" and Mingo got a good look at him when they "locked eyes and looked right at each other." On August 29, 2008, a detective with the New Haven Police Department showed Mingo a photographic array from which she identified the defendant as the man she had observed on the night of August 21, 2008.

On August 23, 2008, one of Grigorenko's stolen credit cards was used at Shaw's Supermarket, and other transactions involving the credit cards were declined at the Burlington Coat Factory. From a surveillance video at Shaw's Supermarket, police identified Latricia Black as the individual who used the stolen credit card. Black testified that on August 23, 2008, a man named "Matt" drove her, Joann Anderson, and another woman,[1] to Shaw's Supermarket where Black purchased items with the stolen credit card that Anderson had given to her. Black identified the defendant, both in and out of court, as the man named "Matt" who was driving the car. Black testified that only she, Anderson, and Black's child went inside Shaw's, and that all the individuals in the car went into the Burlington Coat Factory. Black testified that the group proceeded to Burlington Coat Factory, where a credit card with the name "Tatiana" on it was declined multiple times.

Following a jury trial, the defendant was convicted of robbery in the first degree, assault in the first degree, and carrying a pistol or revolver without a permit. Thereafter, the defendant filed a motion to dismiss the counts of the substitute information charging him with robbery, assault, and carrying a pistol without a permit on the ground that his right to due process had been violated by the preaccusation delay.[2] The court denied the motion on December 16, 2016. On January 26, 2017,

the court sentenced the defendant to a total effective sentence of fifteen years of incarceration, to be served consecutively to an unrelated sentence for murder that he then was serving. This appeal followed.

I

The defendant first claims that the evidence of identity was insufficient to sustain his convictions for robbery in the first degree, assault in the first degree, and carrying a pistol or revolver without a permit. We disagree.

The following principles guide our resolution of the defendant's sufficiency of the evidence claim. The United States Supreme Court held in *Jackson* v. *Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), that the fourteenth amendment commands that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof— defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense."

"Unlike Aristotelian and Thomistic logic, law does not demand metaphysical certainty in its proofs. In law, we recognize three principal proofs: beyond a reasonable doubt, which is the very high burden in a criminal case; clear and convincing evidence, required to prove fraud and certain other claims, which equates to a very high probability; and preponderance of the evidence, applied to civil claims generally, which means it is more probable than not. None of these varying proofs require absolute certainty.

"To meet one's burden of proof, evidence is necessary. This evidence comes in two forms, direct and circumstantial. The basic distinction between direct and circumstantial evidence is that in the former instance the witnesses testify directly of their own knowledge as to the main facts to be proved, while in the latter case proof is given of facts and circumstances from which the jury may infer other connected facts which reasonably follow, according to common experience. . . . Proof of a fact by the use of circumstantial evidence usually involves a two-step process. A fact is first established by direct evidence, which is ordinarily eyewitness or other direct testimony. That direct evidence can serve as a basis from which the jury infers another fact. Thus, the direct evidence may operate as circumstantial evidence from which a fact is inferred by the jury. . . . When the necessity to resort to circumstantial evidence arises either from the nature of the inquiry or the failure of direct proof, considerable latitude is allowed in its reception . . . .

"An inference is a factual conclusion that can rationally be drawn from other facts. If fact A rationally supports the conclusion that fact B is also true, then B may be *inferred* from A. The process of drawing

inferences based on a rough assessment of probabilities is what makes indirect or circumstantial evidence relevant at trial. If the inference (fact B from fact A) is strong enough, then fact A is relevant to prove fact B. Inferences are by their nature permissive, not mandatory: although the fact proved rationally supports the conclusion the offering party hopes will be inferred, the factfinder is free to accept or reject the inference." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *Curran* v. *Kroll*, 118 Conn. App. 401, 408–10, 984 A.2d 763 (2009), aff'd, 303 Conn. 845, 37 A.3d 700 (2012).

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable." (Internal quotation marks omitted.) *State* v. *Morelli*, 293 Conn. 147, 151–52, 976 A.2d 678 (2009).

"[P]roof of a material fact by inference from circumstantial evidence need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . Thus, in determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . In other words, an inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference. Equally well established is our holding that a jury may draw factual inferences on the basis of already inferred facts. . . . Moreover, [i]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence." (Citations omitted; internal quotation marks omitted.) *State* v. *Copas*, 252 Conn. 318, 339–40, 746 A.2d 761 (2000).

"Review of any claim of insufficiency of the evidence introduced to prove a violation of a criminal statute

must necessarily begin with the skeletal requirements of what necessary elements the charged statute requires to be proved." *State* v. *Pommer*, 110 Conn. App. 608, 613, 955 A.2d 637, cert. denied, 289 Conn. 951, 961 A.2d 418 (2008). The state has the burden of proving beyond a reasonable doubt the defendant's identity as the perpetrator of the crime. See *State* v. *Ingram*, 43 Conn. App. 801, 810–11, 687 A.2d 1279 (1996), cert. denied, 240 Conn. 908, 689 A.2d 472 (1997).

The defendant does not dispute that Grigorenko suffered a gunshot wound or that her handbag was stolen, but challenges only the evidence of identity. He contends that the evidence of identity was insufficient because it was based on speculation and conjecture that the perpetrator, whom Grigorenko was unable to identify, was the same individual seen later by Mingo and Aquila, despite the discrepancies in their physical descriptions of the assailant.

The jury reasonably could have concluded from the evidence presented at trial that the defendant was the perpetrator of the crimes. Significantly, Grigorenko, Aquila, and Mingo described events occurring at approximately 8 p.m. on the evening of August 21, 2008, in the same area of New Haven. Grigorenko could not identify her attacker, but she described him as a medium complexioned black male who wore a do-rag on his head, and an oversized T-shirt. Another witness, Aquila, heard a noise that she first thought was fireworks exploding and then saw a medium complexioned black man wearing a cap or a do-rag, running down the middle of Nicoll Street, which is near Edwards Street, toward Lawrence Street with a shoulder bag under his right arm. Finally, a third witness, Mingo, testified that while she was a passenger in a car on Nicoll Street, she saw a medium complexioned black male, who was wearing a do-rag and carrying a woman's handbag in his hand, run down the middle of Nicoll Street toward Lawrence Street. It was reasonable for the jury to infer that Mingo saw the man who shot Grigorenko, given that she saw him carrying a woman's handbag in close proximity in time and location to the attack on Grigorenko. To delve into the differences in the witness' physical descriptions of the defendant would usurp the function of the fact finder to assess credibility, which we cannot do. See *State* v. *Morgan*, 274 Conn. 790, 802, 877 A.2d 739 (2005).

Mingo locked eyes and was able to get a good look at the man when he ran in front of the car in which she was riding. When the police showed her a man near the scene of the crime, she told police that the man who they had stopped was not the person she had seen running with the woman's handbag. On August 29, 2008, she was able to identify positively the defendant from an eight person photographic array as the person she had seen running with a purse. She also identified the

defendant in court. "[W]hen determining whether a witness had sufficient time to observe a defendant to ensure a reliable identification, we have stated that a good hard look will pass muster even if it occurs during a fleeting glance. . . . Furthermore, it is the jury's role as the sole trier of the facts to weigh the conflicting evidence and to determine the credibility of witnesses. . . . Connecticut case law has previously recognized in-court identifications and identifications from fairly presented photographic arrays as sufficient evidence by themselves to allow the trier of fact to conclude that it was the defendant who committed the crimes charged." (Citations omitted; internal quotation marks omitted.) Id., 801–802; see also *State* v. *Smith*, 57 Conn. App. 290, 298–99, 748 A.2d 883, cert. denied, 253 Conn. 916, 754 A.2d 164 (2000).

Additionally, Black identified the defendant as the individual who drove the group to Shaw's Supermarket and Burlington Coat Factory where they successfully and unsuccessfully used Grigorenko's various stolen credit cards. "[P]ossession of recently stolen property raises a permissible inference of criminal connection with the property, and if no explanation is forthcoming, the inference of criminal connection may be as a principal in the theft, or as a receiver under the receiving statute, depending upon the other facts and circumstances which may be proven." (Internal quotation marks omitted.) *State* v. *Rivera*, 39 Conn. App. 96, 104, 664 A.2d 306, cert. denied, 235 Conn. 921, 665 A.2d 908 (1995). In *State* v. *Cote*, 136 Conn. App. 427, 445–46, 46 A.3d 256 (2012), aff'd, 314 Conn. 570, 107 A.3d 367 (2014), burglary convictions were sustained that were based entirely on circumstantial evidence that the defendants were at or near the residence at about the time of the burglary and that they were in possession of items stolen from the residence thereafter. These facts, coupled with the similarity in descriptions given by Grigorenko, Aquila, and Mingo in close proximity in time, lead us to conclude that the state adduced sufficient evidence. In the present case, the defendant's involvement in the use of the stolen credit cards supports Mingo's positive identification of the defendant. Accordingly, we conclude that the state adduced sufficient evidence of the defendant's identity to support his convictions of robbery in the first degree, assault in the first degree, and carrying a pistol without a permit.

II

The defendant next claims that the court erred in denying his motion to dismiss when it improperly concluded that a twenty-three month delay between the commission of the crimes and his arrest did not violate his federal due process rights.[3] We are not persuaded.

In its memorandum of decision on the defendant's motion to dismiss, the court found that the defendant was arrested on July 14, 2010, that a warrant for his

arrest was not prepared until June 25, 2010, and that all of the evidence supporting the allegations contained in the arrest warrant was known to the police as of August 29, 2008. After administrators in the New Haven Police Department eliminated the robbery division and its investigating detectives were transferred to other duties, there was a gap in the assignment of pending robbery cases to investigative personnel.

"We must first consider the standard of review where a claim is made that the court failed to grant a motion to dismiss. Our standard of review of a trial court's . . . conclusions of law in connection with a motion to dismiss is well settled. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts . . . . Thus, our review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Vitale*, 76 Conn. App. 1, 14, 818 A.2d 134, cert. denied, 264 Conn. 906, 826 A.2d 178 (2003).

"The role of due process protections with respect to preaccusation delay has been characterized as a limited one. . . . [T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. . . . This court need only determine whether the action complained of . . . violates those fundamental conceptions of justice which lie at the base of our civil and political institutions . . . and which define the community's sense of fair play and decency . . . . The due process clause has not replaced the applicable statute of limitations . . . [as] . . . the primary guarantee against bringing overly stale criminal charges." (Citation omitted; internal quotation marks omitted.) *State* v. *Crosby*, 182 Conn. App. 373, 391–92, 190 A.3d 1, cert. denied, 330 Conn. 911, 193 A.3d 559 (2018).

"[T]o establish a due process violation because of pre-accusation delay, the defendant must show both that actual substantial prejudice resulted from the delay and that the reasons for the delay were wholly unjustifiable, as where the state seeks to gain a tactical advantage over the defendant . . . . [P]roof of prejudice is generally a necessary but not sufficient element of a due process claim . . . . [Additionally] the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused.[4] (Citations omitted; internal quotation marks omitted.) *State* v. *Morrill*, 197 Conn. 507, 522, 498 A.2d 76 (1985).

The defendant first argues that the delay prejudiced him because it prevented him from obtaining his employment records, which he claims would have shown that he was working at Connecticut Distributors in Stratford during the time that the crimes took place

in New Haven. In its decision, the court noted the following relevant facts. The defendant testified at the hearing on his motion to dismiss that he was employed through a temporary service agency and placed at Connecticut Distributors, where he was working the third shift from 7:30 p.m. to 3:30 a.m. on August 21, 2008. At the hearing on the motion to dismiss, the defendant offered the testimony of Jack Connell, the night manager for Connecticut Distributors, who testified that time cards were kept for temporary employees for "a few months" and that no records for temporary employees were currently available. The court credited the testimony of Bill Steindl, the compliance manager at Connecticut Distributors, who testified that Connecticut Distributors did not retain records for temporary employees. Steindl also testified that temporary employees had their own time cards, which were not retained by Connecticut Distributors, but were sent to a temporary employment agency that paid the temporary employees. We agree with the court's conclusion that the defendant was unable to show, absent the delay, that he would have been able to obtain his employment records from Connecticut Distributors. The defendant presented no evidence regarding record retention by the temporary agency. He, therefore, has not shown that he suffered actual substantial prejudice.

The defendant also argues that he suffered prejudice because the memories of witnesses had faded during the delay. He contends that because he was unable to obtain employment records due to the delay, he had to rely on the memories of Mariam Diaz, the defendant's girlfriend, and Connell, who both had difficulty remembering whether the defendant was working the night shift at Connecticut Distributors on August 21, 2008. "A claim of general weakening of witnesses' memories, relying on the simple passage of time, cannot, without a more specific showing, be said to prejudice the defendant." (Internal quotation marks omitted.) *State* v. *Mooney*, 218 Conn. 85, 121, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991). The specific instances of faded memories cited by the defendant do not establish actual substantial prejudice. With regard to Diaz and Connell, the trial court stated: "It is unclear that Connell would have remembered which temporary employees were working the evening of August 21, 2008, after a delay of any length, as he testified that one hundred or more temporary employees worked at Connecticut Distributors in the course of one year. While Diaz, absent a lengthy delay, may have remembered whether the defendant was at work on August 21, her testimony would have been of limited value, as she was the girlfriend as well as mother of the defendant's child and subject to impeachment for bias." Because there was sufficient evidentiary support for the court's findings that it was not likely that Connell would have remembered after any length of time if one

particular temporary employee out of approximately one hundred worked on a particular night, and that Diaz' testimony was of limited value given her close personal connection to the defendant, we conclude that the defendant has not shown that he suffered actual substantial prejudice.

The defendant last argues that the delay in his arrest prejudiced his ability to obtain cell phone records, which he claims would have demonstrated his approximate location when he called Diaz during his shift at Connecticut Distributors. The trial court determined that the defendant failed to satisfy his burden of showing that absent the delay, the cell site information for his cell phone number would have been available to him at trial. The court noted that the defendant testified that the cell phone number that he used to call Diaz from work was a Sprint phone number, and that the defendant offered at the hearing the testimony of Kerry Walker, a representative from Sprint. The court found that Walker did not verify that the cell phone number used by the defendant was a Sprint cell phone number, nor did she testify that cell site information existed for that cell phone number. The court additionally found that even if the defendant's cell phone number was a Sprint cell phone number and even if cell site records were available to the defendant at trial "that information would have been of limited value. Cell site information does not disclose the location of the cell phone or the identity of the cell phone user. Cell site information merely discloses the location of the closest cell tower with the strongest signal used by the cell phone, which can be a distance as great as thirty miles away. Finally, the only relevant cell phone records submitted [for the phone number allegedly used by Diaz] show phone calls between Diaz and the cell phone number [the defendant testified belonged to him] at 12:39 a.m., 12:57 a.m., and 1:07 a.m. on August 22, 2008. Since the robbery occurred at 8 p.m. on August 21, 2008, the location of the cell tower used in the early morning hours of August 22 does little to support the defendant's claim that he was not in the vicinity of the robbery at the time it occurred." We conclude that the defendant has not shown actual substantial prejudice. The court found that the defendant had not shown that Sprint cell phone records ever existed for the phone number in question. The record supports the court's factual findings. Furthermore, the defendant has not shown that information from a cell tower, which could have been up to thirty miles away, for calls purportedly between Diaz and the defendant that took place the next day more than four hours after the crimes took place, would be of anything more than limited value, which is not enough in this case to prove actual substantial prejudice.

For the foregoing reasons, the defendant has not shown that he suffered actual substantial prejudice from the preaccusation delay, which is "a hurdle the

defendant must overcome to succeed in his due process claim."[5] *State* v. *Roger B.*, 297 Conn. 607, 616, 999 A.2d 752 (2010). We cannot conclude that the preaccusation delay violated the defendant's right to due process of law. We therefore conclude that the trial court did not err in denying the defendant's motion to dismiss.

### III

We next turn to the defendant's claim that the court erred in giving a consciousness of guilt charge regarding a letter the defendant wrote to Diaz while he was held in custody awaiting trial. We are not persuaded.

The following facts, which the jury reasonably could have found, are pertinent to our review. There was evidence before the jury that, while incarcerated and awaiting trial, the defendant wrote a letter to Diaz, stating: "I go to high court the 8th and I'll write you [and] let you know what's going on, in the meantime Ma, try get in touch with Joan because they are gonna try and send an investigator to questioned her to see if she knew me and I need her to be on point let it be known that she doesn't know me at all my love. So please try and call her to see if her phone still works to get the message to her." The court admitted the letter over the defendant's objection. The court noted that some of the letter was difficult to read, including the name "Joan," but that, in light of the totality of the evidence, it was a reasonable inference for the jury to find that the defendant was referring to Joann Anderson, and that he was attempting to get her to testify falsely that she did not know him, although she had been in his company when the stolen credit cards were presented for use at the stores. The court stated that although other reasonable interpretations of the letter could exist, that did not make the letter inadmissible. The court found that the letter was relevant to consciousness of guilt.

The court gave the following charge on consciousness of guilt: "You heard testimony that, after the robbery was supposed to have been committed, the defendant wrote a letter to Mariam Diaz, which the state claims was intended to tamper with a witness in this case, Joann Anderson. The defendant has testified that he wrote the letter, but that it was written to assist his investigator and not to tamper with a witness. If you find, based on the evidence presented, that the defendant did write such a letter and that he intended to tamper with a witness, then you may, but are not required to, infer from those facts that the defendant was acting with a guilty conscience; that is, that he thought he was guilty and was trying to avoid punishment. It is for you to determine whether or not the claims of the state have been proven, whether or not the actions of the defendant reflect a consciousness of guilt, and the significance, if any, to attach to any such evidence."

We first address the defendant's claim that consciousness of guilt instructions should never be given.[6] This claim properly was preserved in the defendant's request to charge and by the defendant's objection at the charging conference to the giving of a consciousness of guilt instruction. The defendant acknowledges in his appellate brief that the law in Connecticut is to the contrary and states that this claim is raised for the sake of future appellate review. In Connecticut, "[t]he decision to give a consciousness of guilt instruction is left to the sound discretion of the trial court." (Internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 820, 155 A.3d 209 (2017). We follow the binding precedent of our Supreme Court.

We next turn to the defendant's claim that the trial court should not have given a consciousness of guilt instruction in this particular case. At trial, his counsel interposed only a general objection to the giving of the instruction, without any of the specifics raised for the first time on appeal, which follow. Although the defendant has requested plain error review; see Practice Book § 60-5; the state claims it should not be granted, but nonetheless has briefed his claims on the merits. Our case law oft contains the nostrum that plain error review is a rule of reversibility. The frequent recitation of that epigram never adequately explains how an appellate tribunal can arrive at a conclusion that a case is not reversible without engaging in some review. Our Supreme Court has left "for another day" whether a trial court's exercise of its discretion can ever amount to plain error. Id., 820 n.13.

"It is clear that an appellate court addressing an appellant's plain error claim *must* engage in a review of the trial court's actions and, upon finding a patent error, determine whether the grievousness of that error qualifies for the invocation of the plain error doctrine and the automatic reversal that accompanies it." (Emphasis in original; internal quotation marks omitted.) *State* v. *McCoy*, 331 Conn. 561, 591, 206 A.3d 725 (2019). Given this background, we review in accordance with this standard.

The defendant first asserts that the giving of the instruction bolstered the state's allegedly insufficient case. For reasons that require little more amplification, we already have concluded that the evidence was sufficient to permit a reasonable jury to find the defendant guilty of the charges against him beyond a reasonable doubt. Grigorenko, Aquila, and Mingo all described events occurring on the same evening at approximately 8 p.m. on New Haven streets that connect with one another involving a young, medium complexioned black male, who was somewhat taller in height than five feet four inches and who was running with a woman's handbag. Grigorenko described being shot in her right thumb by an assailant who took her handbag by that force and

ran away. Aquila heard the gunshot, which she first thought to be fireworks, and then saw a man running down the street with a woman's handbag. Mingo positively identified the defendant as the person running with the handbag. We therefore reject the defendant's argument that the evidence was insufficient, improperly bolstered by the court's charge, or needed bolstering.

We next deal with the defendant's assertion that the letter from the defendant to Diaz, which formed the evidentiary basis for the consciousness of guilt charge, was difficult to read and therefore did not justify the charge. We have reviewed the letter in evidence and do not conclude that it lacked clarity in its printing. Although the letter refers to "Joan" and Anderson's first name is Joann, we agree with the court that it was for the jury to infer whether the letter was referring to Joann Anderson, who was present in the car that the defendant drove to Shaw's and who accompanied the defendant inside Burlington Coat Factory where Grigorenko's stolen credit card was presented.[7] The circumspect reference in the defendant's letter to Diaz noting his need for Anderson to be "on point" in her denial that she knew him could be viewed by the jury as just that, circumspection. The letter supported a reasonable inference that the defendant attempted to influence a witness to lie, which supported an inference that the defendant was guilty of assaulting Grigorenko and stealing her credit cards. The possibility that the letter could be subject to innocent interpretations is not enough to render the instruction improper. "Undisputed evidence that a defendant acted because of consciousness of guilt is not required before an instruction is proper. Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration. . . . The fact that the evidence might support an innocent explanation as well as an inference of a consciousness of guilt does not make an instruction on flight erroneous. . . . Moreover, [t]he court [is] not required to enumerate all the possible innocent explanations offered by the defendant. . . . Once [relevant] evidence is admitted, if it is sufficient for a jury to infer from it that the defendant had a consciousness of guilt, it is proper for the court to instruct the jury as to how it can use that evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Silva*, supra, 113 Conn. App. 496–97. We therefore conclude that the letter was properly grist for the jury's fact-finding mill.

Next, the defendant argues that the court erred in instructing the jury on consciousness of guilt by relying on the defendant's letter to Diaz because the probative value of the letter was outweighed by its prejudicial effect, citing to *State* v. *Gonzalez*, 315 Conn. 564, 593–94, 109 A.3d 453, cert. denied,       U.S.       , 136 S. Ct. 84,

193 L. Ed. 2d 73 (2015). This claim seems to center on the assertion that there was no proof that "Joan" was a reference in the letter to Joann Anderson and that there was no proof of what "on point" meant. We disagree. In this appeal, the defendant has not raised a claim of evidentiary error related to the letter. The letter was in evidence and was probative of the defendant's guilt. A jury is permitted to make logical inferences. If the jury inferred that the reference was to Joann Anderson, the letter was highly probative as to whether the defendant was tampering with a witness who could testify as to the defendant's presence at the use of Grigorenko's stolen credit cards, which could further connect him as the person who had stolen, at the point of a gun, Grigorenko's shoulder bag containing them. "[I]t is the province of the jury to sort through any ambiguity in the evidence in order to determine whether [such evidence] warrants the inference that [the defendant] possessed a guilty conscience." (Internal quotation marks omitted.) *State* v. *Gonzalez*, supra, 594.

Finally, the defendant also claims harm from the giving of the instruction because it undermined his defense, giving significance to problematic evidence, requiring him to explain the context of his letter to Diaz, and negatively impacting the credibility of his defense witnesses. We reject these claims. The court balanced its instructions by summarizing the defendant's explanations for writing the letter. The instructions given by the court properly allowed the jury to draw a permissive inference of the defendant's guilt on the basis of the letter that the defendant wrote to Diaz without expressing an opinion on what inference, if any, might be drawn.

None of these arguments show any clear or obvious error, nor did the giving of the instruction undermine the integrity and the fairness of the proceeding so as to warrant reversal of the defendant's convictions under the plain error doctrine.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Black described the fourth person as a Spanish woman with a tattoo on her arm. Black testified that she saw the woman in the hallway outside the courtroom in which she was testifying and that the woman was wearing a white shirt. Mariam Diaz, the defendant's girlfriend, testified that she had a tattoo on her arm. During closing argument, the prosecutor reminded the jury that Diaz "was dressed in white . . . ."

[2] The defendant also was convicted of tampering with a witness in violation of General Statutes § 53a-151 (a). The defendant filed a motion for a judgment of acquittal on statute of limitations grounds as to his conviction of that offense and the court granted that motion on that ground on December 16, 2016.

[3] The defendant also mentions the state constitution in his brief on appeal, but fails to provide an analysis of the *Geisler* factors. See *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992). Accordingly, we deem his claim under the state constitution abandoned and decline to review it. See *State* v. *Bennett*, 324 Conn. 744, 748 n.1, 155 A.3d 188 (2017).

[4] We do not agree with the defendant's argument that the trial court improperly failed to apply the standard in *State* v. *Hodge*, 153 Conn. 564, 219 A.2d 367 (1966). In that case our Supreme Court stated that the defen-

dant's rights in a claim of prearrest delay "must necessarily depend on all the circumstances, including the length of the delay, the reason for the delay, prejudice to the defendant, and a timely presentation of the claim to the trial court." Id., 568. *Hodge* preceded the prearrest delay cases of the Supreme Court in *United States* v. *Marion*, 404 U.S. 307, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971), and *United States* v. *Lovasco*, 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977), which use a substantial prejudice standard. Our Supreme Court has adopted that standard in *State* v. *Morrill*, 197 Conn. 507, 522, 498 A.2d 76 (1985), and its progeny.

[5] Because we conclude that the defendant has not demonstrated that he suffered actual, substantial prejudice, we need not consider whether the state's delay in arresting him was wholly unjustifiable. See *State* v. *Crosby*, supra, 182 Conn. App. 395 n.11.

[6] "We review a trial court's decision to give a consciousness of guilt instruction under an abuse of discretion standard. . . . Evidence that an accused has taken some kind of evasive action to avoid detection for a crime, such as flight, concealment of evidence, or a false statement, is ordinarily the basis for a [jury] charge on the inference of consciousness of guilt." (Citation omitted; internal quotation marks omitted.) *State* v. *Vasquez*, 133 Conn. App. 785, 800, 36 A.3d 739, cert. denied, 304 Conn. 921, 41 A.3d 661 (2012). "To prevail on her claim, the defendant must establish both that the court abused its discretion and that she suffered harm as a result." *State* v. *Silva*, 113 Conn. App. 488, 496, 966 A.2d 798 (2009).

[7] The defendant testified that he knew a woman named Joann Anderson, they were not close, and that he wrote the letter so that Anderson could "get the situation situated, that she didn't know me."

---