******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

ROGER B. *v.* COMMISSIONER
OF CORRECTION*
(AC 47136)

Elgo, Moll and Lavine, Js.

*Syllabus*

The petitioner, who had been convicted of various crimes as a result of incidents that occurred between 1995 and 2000, appealed, on the granting of certification, from the habeas court's judgment denying his second petition for a writ of habeas corpus. He claimed, inter alia, that his criminal trial counsel, C, and his counsel in two previous habeas trials, R and B, had rendered ineffective assistance by failing to raise a statute of limitations defense regarding the eighteen month delay between the issuance of the warrant for the petitioner's arrest in 2005 and the execution of the warrant in 2007. *Held*:

The habeas court properly concluded that the petitioner was required to present new evidence in his third habeas trial, which B had not previously introduced, to demonstrate that C and B had rendered ineffective assistance, as the petitioner's claim that the court improperly applied the law of the case doctrine was based on his misunderstanding of that doctrine.

The habeas court incorrectly determined that the petitioner failed to establish that C and B had rendered ineffective assistance of counsel, as the new evidence presented at the third habeas trial established that the police had made no attempts at all to serve him with the arrest warrant, and an expert's testimony laid bare C's misunderstanding of the required showing of prejudice under *State* v. *Crawford* (202 Conn. 443) that was the basis of C's failure to file a motion to dismiss the charges against the petitioner.

The petitioner satisfied his burden to establish that he was prejudiced under *Strickland* v. *Washington* (466 U.S. 668) as a result of C's failure to rely on the delay in the execution of the arrest warrant, and, in conjunction with other evidence adduced at the habeas trial, B's failure to introduce into evidence a blank arrest warrant service record form that had been in the possession of the police, which provided a devastating counterpoint that would have undermined the credibility of the state's vague and unsupported assertions at the criminal trial regarding its efforts to execute the warrant, left no question that the police did not exercise due diligence in executing

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the petitioner's full name or to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

the warrant without unreasonable delay; accordingly, the habeas court's judgment was reversed and the case was remanded with direction to grant the writ of habeas corpus, to vacate the petitioner's conviction and to order a new trial.

Argued February 19—officially released August 26, 2025

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the petition was withdrawn in part; thereafter, the case was tried to the court, *Bhatt, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Reversed*; *judgment directed.*

*Jeremy A. Kemp*, assigned counsel, with whom, on the brief, was *Joseph Patten Brown III*, assigned counsel, for the appellant (petitioner).

*Rebecca R. Zeuschner*, deputy assistant state's attorney, with whom, on the brief, were *David R. Shannon*, state's attorney, and *Elizabeth M. Moseley*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

MOLL, J. The petitioner, Roger B., appeals, following the granting of his petition for certification to appeal, from the habeas court's judgment denying his amended petition for a writ of habeas corpus. On appeal, he claims that the court (1) incorrectly applied the law of the case doctrine to conclude that it was bound by this court's most recent decision in this matter, *Roger B.* v. *Commissioner of Correction*, 190 Conn. App. 817, 212 A.3d 693, cert. denied, 333 Conn. 929, 218 A.3d 70 (2019), and cert. denied, 333 Conn. 929, 218 A.3d 71 (2019) (*Roger B. II*), and (2) improperly denied his habeas petition, which was predicated on the alleged ineffective assistance of his prior habeas counsel and trial counsel. We agree with the petitioner's second claim

and, accordingly, reverse the judgment of the habeas court.

Because the present case has a somewhat convoluted procedural history, we first provide a broad outline of the postconviction proceedings. After the petitioner's conviction was affirmed by our Supreme Court on appeal, on August 21, 2008, he filed a petition for a writ of habeas corpus (first petition) alleging that his trial counsel, Attorney Christopher Cosgrove, had rendered ineffective assistance of counsel. The denial of that petition was reversed in part by this court and remanded for a second habeas trial. See *Roger B.* v. *Commissioner of Correction*, 157 Conn. App. 265, 267, 116 A.3d 343 (2015) (*Roger B. I*). Following the second habeas trial, this court affirmed the denial of the first petition. See *Roger B.* v. *Commissioner of Correction*, supra, 190 Conn. App. 817. On December 12, 2019, the petitioner filed a second petition for habeas corpus. The operative petition is his second amended petition filed on January 5, 2023 (second amended petition). In the second amended petition, he alleges ineffective assistance of counsel as to Cosgrove and both of his prior habeas counsel, Attorney Roger L. Crossland and Attorney Bruce McIntyre.

On direct appeal, our Supreme Court set forth the following relevant background.[1] Between 1995 and 2000, the petitioner lived with his girlfriend and her three children. *State* v. *Roger B.*, 297 Conn. 607, 609, 999 A.2d 752 (2010). During that time period, the petitioner sexually assaulted two of the children on numerous occasions. Id., 610. In February, 2000, the two victims were placed in the custody of the Department of Children and Families (department) for reasons unrelated

---

[1] We confine our summary of the facts to those necessary to provide context for the issue presented in this appeal. For a full recitation of the facts that the jury reasonably could have found, see *State* v. *Roger B.*, 297 Conn. 607, 609–10, 999 A.2d 752 (2010).

to the abuse. Id. Sometime in the next few months, both victims independently reported the abuse to their foster mother, who reported the allegations to the department, which then reported the allegations to the New Milford Police Department. Id., 610, 612.

"On July 17, 2000, Detective James M. Mullin watched a forensic interview of the [victims]. . . . On August 31, 2000, the petitioner gave Mullin a statement and permission for the police to search his apartment and storage unit. . . . The petitioner left Connecticut approximately five months after he gave the statement to Mullin. . . .

"The police completed their investigation in 2000 and discovered no additional evidence between 2000 and 2005. . . . On July 6, 2005, the police obtained a warrant to arrest the petitioner." (Citations omitted; emphasis omitted.) *Roger B.* v. *Commissioner of Correction*, supra, 190 Conn. App. 823. As the first habeas court recognized, because "the sexual abuse was 'reported' by the victims to the police on July 17, 2000, when the police viewed the forensic interviews of the victims," the applicable limitations period of five years; see footnote 5 of this opinion; commenced on that date. See, e.g., *State* v. *George J.*, 280 Conn. 551, 566, 910 A.2d 931 (2006) ("the limitations period commences only when the actual victim notifies the specified authorities"), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007). Accordingly, the warrant was issued weeks before the expiration of the limitations period.[2]

On July 7, 2005, one day after the warrant was issued, the police posted a wanted persons notice in the

---

[2] In his direct appeal, the petitioner claimed that the almost five year delay in issuing the warrant violated his constitutional right to due process pursuant to the fourteenth amendment to the United States constitution. Our Supreme Court rejected that claim on the ground that the record was inadequate for review "because it contain[ed] no evidence demonstrating that the [petitioner] suffered actual prejudice as a result of the delay." *State* v. *Roger B.*, supra, 297 Conn. 612.

National Crime Information Center (NCIC) database. That notice specified that the warrant was nonextraditable and identified Mullin as the contact person regarding extradition. On that same day, the police received notice through the NCIC database that the petitioner was living at 120 Berry Street in Greenfield, Indiana.[3] Despite that notice, the warrant was not made extraditable until sixteen months later, in November, 2006, when Attorney David S. Shepack, then the state's attorney for the judicial district of Litchfield, authorized extradition from any location within the continental United States. The habeas court found that "[t]he importance of making the warrant extraditable is that if an individual who is sought is located in another state, where Connecticut police do not have jurisdiction, Connecticut can receive cooperation of local law enforcement, take that individual into custody, and begin extradition proceedings to Connecticut."

Mullin testified at the petitioner's criminal trial and two of the habeas trials regarding the efforts undertaken by the New Milford police to execute the warrant. At the criminal trial, when asked why the warrant was not issued until almost five years after the petitioner's crimes had been reported, Mullin responded, "[b]ecause that's when it was drawn up." He testified that he first learned, at some unspecified time, from motor vehicle records that the petitioner had relocated to Indiana. He acknowledged that the police also learned that the petitioner had obtained a driver's license in Indiana under his name and that he used his Social Security number in connection with employment. Mullin further testified that the police "eventually" identified an address for the petitioner and "had some marshals go out there to see if he was out there, but he had left

---

[3] The petitioner relocated within Indiana on several occasions before eventually moving to Alabama. *Roger B.* v. *Commissioner of Correction,* supra, 190 Conn. App. 823–24.

already." The police finally located the petitioner in Alabama, Mullin testified, through his Social Security number and employment records. When asked why he had not contacted the petitioner's family members to learn of his location, Mullin testified that he wanted to avoid the possibility that they might alert the petitioner about the warrant.

During the first habeas trial, Mullin admitted that he first learned of the petitioner's location in Indiana when the New Milford police received the NCIC notice with that information one day after the warrant was issued. He produced several documents pertaining to his attempts to locate and arrest the petitioner. "These documents were a letter from . . . Shepack dated November 8, 2006, three printouts dated December 11, 2006, and a printout dated January 24, 2007. There were no documents in his file recording any efforts made between July 6, 2005, and November 8, 2006." Mullin could not recall whether he had gone to the petitioner's last known location in Connecticut to attempt to serve the warrant. He stated that, at some point, members of the United States Marshals Service went to the petitioner's address in Indiana, then informed him that the petitioner was not at that location. He could not recall the names of the marshals who went to the petitioner's Indiana residence, did not provide the names of the marshals with whom he communicated, and acknowledged that he had no documentation of those communications or of the alleged attempt to serve the warrant on the petitioner in Indiana, but stated that it was not unusual for documentation of such communications to be lacking. Mullin testified again at the third habeas trial. With the exception of an inability to recollect many of the relevant events given the passage of time, much of his testimony largely mirrored that provided in the first habeas trial.

Although it is unclear from the record when the petitioner relocated to Alabama, law enforcement ultimately found him living there. On December 11, 2006, the police department of Huntsville, Alabama, posted multiple notices on the national law enforcement telecommunications service, first inquiring whether the warrant for the petitioner's arrest was still active and whether Connecticut would extradite, then informing the New Milford police that the petitioner had been arrested as a fugitive from justice. On January 24, 2007, the petitioner was transported to New York, where he was served with the arrest warrant and taken into custody.

"The petitioner was charged in a substitute information with offenses that occurred on various dates between October 1, 1995, and February 1, 2000. A jury found the petitioner guilty of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A), and three counts of risk of injury to a child in violation of General Statutes § 53-21 (2). In April, 2008, the trial court, *Sheldon, J.*, sentenced the petitioner to a total effective term of twenty-nine years in prison, execution suspended after twenty-three years, and thirty years of probation. . . . The petitioner's conviction was affirmed on direct appeal." (Citation omitted.) *Roger B.* v. *Commissioner of Correction*, supra, 190 Conn. App. 824.

Although the petitioner's trial counsel, Cosgrove, was aware of the availability of a statute of limitations claim, he did not file a motion to dismiss or assert an affirmative defense on the basis of the delays in both issuing and executing the arrest warrant because "he did not believe that there was a basis for doing so." Specifically, Cosgrove "determined that the delays did not hinder the defense in any way, in that no new information

arose during the period, no witnesses went missing, and the witnesses were able to recall events." He arrived at that conclusion after conducting his own research, then consulting with appellate lawyers for the Office of the Chief Public Defender.

At the trial on his first habeas petition, during which he was represented by Crossland, the petitioner claimed that Cosgrove had rendered ineffective assistance by failing to file a motion to dismiss or to assert an affirmative defense predicated on the applicable statute of limitations.[4] *Roger B.* v. *Commissioner of Correction,* supra, 190 Conn. App. 825–26. The habeas court denied the petition. In its memorandum of decision, the court first noted that the arrest warrant had been issued approximately two weeks prior to the expiration of the five year limitations period set forth in General Statutes (Rev. to 1999) § 54-193a.[5] In its analysis of the petitioner's ineffective assistance claim, although the court found that the warrant was executed on January 24, 2007, which indisputably is beyond the five year limitations period, it did not consider whether the delay in executing the warrant was reasonable. The court simply stated that Cosgrove had not performed deficiently by failing to file a motion to dismiss because he "did the math and determined that the warrant was executed within the applicable statute of limitations period."

[4] In his first petition, the petitioner alleged additional grounds in support of his claim of ineffective assistance of counsel and raised two additional claims: an actual innocence claim and the due process claim that our Supreme Court had rejected in the direct appeal. See footnote 2 of this opinion.

[5] General Statutes (Rev. to 1999) § 54-193a, which has subsequently been repealed, was the applicable statute of limitations at the time that the petitioner committed the offenses and provided in relevant part: "Notwithstanding the provisions of section 54-193, no person may be prosecuted for any offense involving sexual abuse, sexual exploitation or sexual assault of a minor except within two years from the date the victim attains the age of majority or within five years from the date the victim notifies any police officer or state's attorney acting in his official capacity of the commission of the offense . . . ."

On appeal, this court reversed in part the judgment of the habeas court. See *Roger B.* v. *Commissioner of Correction*, supra, 157 Conn. App. 289. Specifically, this court concluded that, in rejecting the petitioner's claim that Cosgrove was ineffective in failing to raise a statute of limitations defense, the habeas court improperly limited its discussion to the facts pertaining to the issuance of the warrant within the limitations period and failed to consider whether the delay in executing the warrant was reasonable. Id., 278–79. Accordingly, this court remanded the case to the habeas court for a second trial on the petition, limited to the issue of whether Cosgrove had rendered ineffective assistance by failing to raise a statute of limitations defense based on the state's delay in executing the warrant. See id., 279–80. This court explained that, on remand, if the petitioner met his initial burden to prove that he was not elusive and was available and readily approachable, "the burden would shift, and the subsequent evidentiary analysis would include consideration of whether the respondent [the Commissioner of Correction] would have succeeded in proving that the delay was not unreasonable. This analysis would involve [an] examination of the police actions leading up to the execution of the warrant." Id., 279.

The petitioner was represented at the second trial on the first petition by McIntyre, who called no witnesses and introduced no new evidence, instead relying solely on the transcripts and evidence from the first habeas trial. A single witness testified at trial, Cosgrove, who was called by the respondent. The habeas court again denied the petition. The court relied on former General Statutes § 54-193 (d), now General Statutes § 54-193 (e), which provided in relevant part: "If the person against whom an . . . information . . . for any of said offenses is brought has fled from and resided out of this state during the period so limited, it may be

brought against such person at any time within such period, during which such person resides in this state . . . ." The petitioner's relocation outside the state of Connecticut, the court reasoned, had tolled the statute of limitations, thus rendering the delay in the execution of the arrest warrant irrelevant because both the issuance and service of the warrant had occurred within the limitations period. The only claim that Cosgrove could have raised on the petitioner's behalf at trial, the court explained, was that the warrant was stale in violation of his right to due process, a claim that would have required him to prove that the delay was unjustifiable because it resulted in actual prejudice to the petitioner. See footnote 4 of this opinion. The habeas court concluded that Cosgrove had correctly determined that this was a showing he could not make.

This court affirmed the judgment of the habeas court. See *Roger B.* v. *Commissioner of Correction*, supra, 190 Conn. App. 853. During the pendency of that appeal, this court had ordered sua sponte the habeas court to make additional factual findings on the basis of the existing record related to the petitioner's statute of limitations defense, including whether the petitioner "was not elusive, was available and was readily approachable, and if so, whether the delay in executing the warrant was unreasonable." Id., 830.

In its articulation issued in response to this court's order, the habeas court again theorized that the statute of limitations had been tolled pursuant to § 54-193 (d) when the petitioner relocated outside Connecticut. Given that principle, the court reasoned, § 54-193 (d) represented a legislative determination that relocation outside Connecticut constitutes elusive behavior. Even in the absence of that legal starting point, however, the court explained, it independently had arrived at the same finding by "employing the common meanings of [the terms] elusive, available, and approachable . . . ."

Relying on the petitioner's relocation to Indiana within months after having been questioned by the police, without leaving a forwarding address, the court determined that the petitioner had failed to sustain his burden to prove that he was not elusive and was available and readily approachable.

This court concluded that the habeas court improperly determined that (1) § 54-193 (d) had tolled the statute of limitations, and (2) the petitioner had failed to prove that he was not elusive and was available and readily approachable. See *Roger B.* v. *Commissioner of Correction*, supra, 190 Conn. App. 840. Section 54-193 (d), this court explained, applies only to toll the statute of limitations prior to the issuance of a warrant. Id., 841. Because the warrant for the petitioner's arrest had issued within the limitations period, § 54-193 (d) was inapplicable to the present case. Id. The inquiry as to whether the petitioner was elusive, this court stated, pertained to whether the delay in *executing* the warrant was reasonable. See id. In arriving at its determination that the petitioner had failed to show that he was not elusive, however, the habeas court improperly focused almost exclusively on his movements and actions prior to the issuance of the warrant and made no factual findings regarding the petitioner's postissuance actions, except to find that the petitioner had moved from Indiana to Alabama.[6] Id., 842.

This court also concluded, however, that the habeas court properly determined that the petitioner had not met his burden to prove both prongs of the test set forth in *Strickland* v. *Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to establish ineffective assistance of counsel. To prevail under

[6] The state has not challenged in this appeal the habeas court's determination that this court's decision in *Roger B. II* established that the petitioner was not elusive.

*Strickland*, this court explained, the petitioner had to prove both that Cosgrove's failure to raise the statute of limitations was objectively unreasonable and that the petitioner was prejudiced by that failure because there was a reasonable probability that the state would have been unable to prove that the delay in executing the warrant was reasonable. See *Roger B.* v. *Commissioner of Correction*, supra, 190 Conn. App. 842–46; see also *State* v. *Crawford*, 202 Conn. 443, 450–51, 521 A.2d 1034 (1987) (setting forth principles governing claim challenging prosecution based on execution of warrant outside statute of limitations); *State* v. *Woodtke*, 130 Conn. App. 734, 741–42, 25 A.3d 699 (2011) (applying burden shifting test to evaluate defendant's statute of limitations claim pursuant to *Crawford*). In concluding that the petitioner had failed to demonstrate that Cosgrove's performance was deficient, this court observed that, in addition to conducting his own research, Cosgrove had consulted appellate lawyers for the Office of the Chief Public Defender, and that the petitioner had not presented any "expert testimony to contradict the opinions of Cosgrove and the appellate lawyers with whom he consulted." *Roger B.* v. *Commissioner of Correction*, supra, 852. As to prejudice, this court concluded that the petitioner had "failed to demonstrate [that there was a reasonable probability] that the state would not have been able to prove that the delay in the execution of the warrant was reasonable." Id., 853.

The petitioner subsequently filed his second petition for a writ of habeas corpus. In his second amended petition, he claims that Cosgrove rendered ineffective assistance by failing to raise the statute of limitations at trial and that Crossland and McIntyre also rendered ineffective assistance as a result of their various alleged failures in litigating this claim in support of the first habeas petition.[7] At the third habeas trial, the petitioner

[7] The second amended petition also alleged in a separate count that, because the state had failed to execute the warrant for the petitioner's arrest

called Mullin, Shepack, Crossland, Attorney Deren Manasevit, who represented the petitioner in both of his prior habeas appeals, and Attorney Frank Riccio, who offered expert testimony. In addition to documentary evidence introduced in the first two habeas trials, the petitioner introduced three new pieces of evidence, which we discuss in detail herein.

In its memorandum of decision, the habeas court observed that, because Crossland's representation of the petitioner in the first habeas trial had resulted in the granting of a new trial on the first petition; see *Roger B.* v. *Commissioner of Correction*, supra, 157 Conn. App. 289; the court was not required to consider whether Crossland had rendered ineffective assistance. That is, to prevail on the second petition, the petitioner was required to prove only that McIntyre and Cosgrove had rendered ineffective assistance. In considering whether the petitioner had made that showing, the habeas court took as its starting point this court's conclusions in *Roger B.* v. *Commissioner of Correction*, supra, 190 Conn. App. 817, as to the first petition, namely, that the petitioner had satisfied his burden to prove that he was not elusive and was available and readily approachable, but that he had failed to prove both prongs of *Strickland.* Given this court's holding in *Roger B. II* affirming the denial of the first petition, the habeas court explained that, for the petitioner to prevail on the second petition, he was required to produce new evidence at the third trial, which, if it had been produced earlier during the habeas proceedings, would have demonstrated that Cosgrove's failure at the criminal trial to raise the state's delay in executing the

with due diligence, his conviction, sentence, and incarceration were obtained in violation of his right to due process pursuant to the fifth and fourteenth amendments to the United States constitution, and article first, §§ 8 and 9, of the Connecticut constitution. This count was the subject of a motion to dismiss and subsequently was withdrawn.

warrant was objectively unreasonable, and that, if Cosgrove had raised the statute of limitations, there was a reasonable probability that the state would have been unable to prove that the delay was reasonable. The court denied the petition based on its conclusion that the petitioner had failed to demonstrate that Cosgrove rendered ineffective assistance of counsel. The petitioner then filed a petition for certification to appeal, which the court granted, and this appeal followed.

During the pendency of this appeal, this court remanded the case to the habeas court "to resolve the following questions: (1) whether the habeas court credited the testimony of . . . Mullin that only local attempts to serve an arrest warrant would be logged in the warrant service record, which was introduced in the third habeas trial as exhibit 30; and (2) whether . . . McIntyre's decision not to introduce the warrant service record into evidence in the second habeas trial was objectively reasonable, particularly considering the determination of the third habeas court as set forth in its October 4, 2023 memorandum of decision that, if McIntyre had introduced it into evidence, 'there is a reasonable probability that, combined with all the other evidence, he would have been able to show that the state would not have been able to prove that the delay was reasonable.' " We discuss the habeas court's findings in response to this court's order in part II of this opinion. Additional facts and procedural history will be set forth as necessary.

I

The petitioner first claims that the habeas court improperly concluded that, unless he produced new evidence that, had it been produced earlier in the habeas proceedings, would have demonstrated that Cosgrove rendered ineffective assistance, this court's conclusions in *Roger B.* v. *Commissioner of Correction*, supra, 190

Conn. App. 817, required that the petition be denied. The petitioner contends that, in doing so, the habeas court improperly applied the law of the case doctrine. We disagree.

The petitioner's claim reflects a misunderstanding of the law of the case doctrine, the concept of precedential authority, the required showing in a "habeas on a habeas" action, and the decision of the habeas court. Although a trial court decision "does not establish binding precedent" (internal quotation marks omitted); *In re Emma F.*, 315 Conn. 414, 432, 107 A.3d 947 (2015); "[t]he law of the case doctrine expresses the practice of judges generally to refuse to reopen what [already] has been decided . . . . New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored. . . . [When] a matter has previously been ruled [on] interlocutorily, the court . . . may treat that [prior] decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Internal quotation marks omitted.) *Glastonbury* v. *Sakon*, 172 Conn. App. 646, 657, 161 A.3d 657 (2017).

In the present case, the habeas court did not consider the effect of a previous ruling of a trial court but, rather, this court's decision in *Roger B.* v. *Commissioner of Correction*, supra, 190 Conn. App. 817, affirming the final judgment of the second habeas court denying the petitioner's first petition for a writ of habeas corpus. Under these circumstances, the law of the case doctrine simply does not apply, and there is no indication in the decision of the habeas court that it relied on that doctrine. Instead, the court relied on a principle of black letter law, reasoning that, unless the present case is distinguishable from *Roger B. II*, that decision constitutes controlling precedent that the habeas court was

required to follow. See, e.g., *Ferrigno* v. *Cromwell Development Associates*, 44 Conn. App. 439, 443, 689 A.2d 1150 (1997) ("[i]t is axiomatic that [a] decision of [an appellate court] is a controlling precedent until overruled or qualified" (internal quotation marks omitted)), aff'd, 244 Conn. 189, 708 A.2d 1371 (1998). The court's statement that the petitioner was required to produce new evidence in order for the court to depart from the holding of *Roger B. II* is properly grounded on that principle.

The habeas court's conclusion also finds support in the legal principles governing the court's consideration of a "habeas on a habeas," the term commonly used to refer to a petition for a writ of habeas corpus that raises a claim of ineffective assistance of prior habeas counsel. See, e.g., *Sinchak* v. *Commissioner of Correction*, 126 Conn. App. 684, 686, 14 A.3d 343 (2011). In *Lozada* v. *Warden*, 223 Conn. 834, 842–43, 613 A.2d 818 (1992), "our Supreme Court established that habeas corpus is an appropriate remedy for the ineffective assistance of appointed habeas counsel, authorizing what is commonly known as a habeas on a habeas, namely, a second petition for a writ of habeas corpus . . . challenging the performance of counsel in litigating an initial petition for a writ of habeas corpus . . . [that] had claimed ineffective assistance of counsel at the petitioner's underlying criminal trial or on direct appeal. . . . [T]he court in *Lozada* . . . emphasized that a petitioner asserting a habeas on a habeas faces the herculean task . . . of proving in accordance with *Strickland* v. *Washington*, [supra, 466 U.S. 687], both (1) that his appointed habeas counsel was ineffective, and (2) that his trial counsel was ineffective." (Internal quotation marks omitted.) *Lebron* v. *Commissioner of Correction*, 204 Conn. App. 44, 50, 250 A.3d 44, cert. denied, 336 Conn. 948, 250 A.3d 695 (2021).

Accordingly, to prevail on his second habeas petition, the petitioner was required to demonstrate not only that Cosgrove had rendered ineffective assistance, but also that McIntyre's failure to make that required showing in the second trial on the first petition constituted ineffective assistance. The habeas court properly concluded that, to meet his burden, the petitioner would have to present new evidence, not introduced by McIntyre, that demonstrated that both Cosgrove and McIntyre had rendered ineffective assistance of counsel.

II

The petitioner next claims that the habeas court improperly concluded that he failed to prove that Cosgrove and McIntyre had rendered ineffective assistance of counsel. He points out that, because the habeas court's analysis began with this court's conclusion in *Roger B. II* that he had established that he was not elusive and was available and readily approachable, the only remaining issues were whether he also had satisfied his burden to prove that (1) there was a reasonable probability that, if Cosgrove had relied on *Crawford* at trial, the state would have been unable to demonstrate that the delay in executing the warrant was reasonable, (2) Cosgrove's failure to raise *Crawford* during the criminal trial constituted deficient performance, and (3) McIntyre's failure to make this showing in the second trial on the first petition constituted ineffective assistance of counsel. The petitioner argues that the habeas court improperly concluded that he had failed to meet his burden and relies on three new pieces of documentary evidence introduced during the third habeas trial, as well as testimony from two new witnesses, Shepack and Riccio. That new evidence, he contends, demonstrates that the state would have been unable to prove that the delay in executing the warrant

was reasonable, thus proving both deficient performance and prejudice as to both Cosgrove and McIntyre pursuant to *Strickland*.

As we explained in part I of this opinion, given this court's decision in *Roger B. II*, we conclude that the habeas court properly began with the proposition that the petitioner had established that he was not elusive and was available and readily approachable. We also conclude that the findings of the habeas court regarding the new evidence and testimony introduced by the petitioner establish that both McIntyre and Cosgrove had rendered ineffective assistance of counsel. See *Roger B.* v. *Commissioner of Correction*, supra, 190 Conn. App. 844 ("[i]n a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary" (internal quotation marks omitted)).

A

We begin by reviewing the relevant legal principles. The standard of review in a habeas corpus proceeding challenging the effective assistance of trial counsel is well settled. "The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . [T]his court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Internal quotation marks omitted.) *Lebron* v. *Commissioner of Correction*, supra, 204 Conn. App. 51.

"To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*,

[supra, 466 U.S. 687]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment." (Internal quotation marks omitted.) *Tierinni* v. *Commissioner of Correction*, 230 Conn. App. 318, 328–29, 329 A.3d 969, cert. denied, 351 Conn. 917, 332 A.3d 293 (2025). "[T]here is a strong presumption in favor of concluding that counsel's performance was competent. . . . In order to overcome that presumption, *the petitioner bears the burden* of proving that counsel's representation fell below an objective standard of reasonableness. . . . [T]he performance inquiry must be whether counsel's assistance was reasonable *considering all the circumstances*. . . . Thus, the question of whether counsel's behavior was objectively unreasonable is not only one on which the petitioner bears the burden of proof; its resolution turns on a fact intensive inquiry." (Emphasis in original; internal quotation marks omitted.) *Banks* v. *Commissioner of Correction*, 225 Conn. App. 234, 246–47, 314 A.3d 1052, cert. denied, 349 Conn. 922, 321 A.3d 1130 (2024).

"With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks

omitted.) *Soto* v. *Commissioner of Correction*, 215 Conn. App. 113, 120, 281 A.3d 1189 (2022).

It is well established that "the issuance of an arrest warrant within the limitation period set forth in [the applicable statute of limitations] commences a prosecution for purposes of satisfying the statute of limitations, so long as the warrant is executed without unreasonable delay." *State* v. *A. B.*, 341 Conn. 47, 49, 266 A.3d 849 (2021); see also *State* v. *Crawford*, supra, 202 Conn. 450–51. "When an arrest warrant has been issued, and the prosecutorial official has promptly delivered it to a proper officer for service, he has done all he can under our existing law to initiate prosecution and to set in motion the machinery that will provide notice to the accused of the charges against him. When the prosecutorial authority has done everything possible within the period of limitation to evidence and effectuate an intent to prosecute, the statute of limitations is [satisfied]." (Footnote omitted.) *State* v. *Crawford*, supra, 450. Our Supreme Court has recognized, however, that "some limit as to when an arrest warrant must be executed after its issuance is necessary in order to prevent the disadvantages to an accused attending stale prosecutions, a primary purpose of statutes of limitation[s]." Id.

In light of that recognition, our Supreme Court has held that, "in order to [satisfy] the statute of limitations, an arrest warrant, when issued within the time limitations . . . must be executed without unreasonable delay" and has declined to "adopt a per se approach as to what period of time to execute an arrest warrant is reasonable." Id., 450–51. Instead, the court has stated that "[a] reasonable period of time is a question of fact that will depend on the circumstances of each case. If the facts indicate that an accused consciously eluded the authorities, or for other reasons was difficult to apprehend, these factors will be considered in

determining what time is reasonable. If, on the other hand, the accused did not relocate or take evasive action to avoid apprehension, failure to execute an arrest warrant for even a short period of time might be unreasonable and fail to [satisfy] the statute of limitations." Id., 451.

To prevail on a claim that a delay in executing a warrant was unreasonable pursuant to *Crawford*, the defendant bears the initial burden to prove that he "was not elusive, was available and was readily approachable . . . ." (Internal quotation marks omitted.) *State* v. *Swebilius*, 325 Conn. 793, 804–805, 159 A.3d 1099 (2017). When the defendant has met that burden, thereby demonstrating "his availability for arrest, he has done all that is required to carry his burden; the burden then shifts to the state to demonstrate that any period of delay in executing the warrant was not unreasonable." Id., 804; see also *State* v. *Woodtke*, supra, 130 Conn. App. 740 ("once a defendant puts forth evidence to suggest that she was not elusive, was available and was readily approachable, the burden shifts to the state to prove that the delay in executing the warrant was not unreasonable" (internal quotation marks omitted)).

With respect to the nature of the state's burden to show reasonableness, our Supreme Court has declined "to specify the precise actions that [law enforcement officials] must undertake to serve a warrant with due diligence, or the precise timeline within which they must act . . . ." *State* v. *Swebilius*, supra, 325 Conn. 808. The state must, however, "present some credible and persuasive factual basis for inaction when [such officials] fail to observe the statute of limitations. This requirement is consistent with the principle that, when a judicial doctrine, for all practical purposes, extends the statute [of limitations] beyond its stated term, that doctrine should be applied in only limited circumstances . . . ." (Internal quotation marks omitted.) Id.,

808–809. The court recently elaborated on the meaning of "due diligence" in this context, explaining that it "means doing everything reasonable, not everything possible. . . . Due diligence does not require a party to do everything possible to attain its objective, but, at the same time, it requires something more than nonchalance. The state exercises due diligence, in short, if it undertakes efforts to execute a warrant by persevering application . . . [made] in good earnest." (Citations omitted; internal quotation marks omitted.) *State* v. *Freeman*, 344 Conn. 503, 518–19, 281 A.3d 397 (2022).

As this court has explained, in the habeas context, the petitioner bears the burden to prove both the performance and prejudice prongs of *Strickland*. That requirement, when understood in conjunction with the *Crawford* burden shifting test, means that a habeas petitioner who asserts an ineffective assistance of counsel claim predicated on *Crawford* must first prove that he was not elusive and was available and readily approachable. Although that showing would shift the burden to the state in a direct proceeding, in a habeas action, because the petitioner must prove both *Strickland* prongs in order to prevail, if a petitioner demonstrates he was not elusive, he must then prove that (1) his trial counsel's failure to challenge the delay in executing the warrant was objectively unreasonable, and (2) if trial counsel had challenged the arrest warrant on the basis of the statute of limitations, there is a reasonable probability that the state would have been unable to demonstrate that any delay in executing the warrant was reasonable. Compare *Gonzalez* v. *Commissioner of Correction*, 122 Conn. App. 271, 285–86, 999 A.2d 781 (because petitioner failed to prove he was not elusive, burden would not have shifted at trial, and petitioner failed to prove reasonable probability existed that he would have prevailed on motion to dismiss), cert.

denied, 298 Conn. 913, 4 A.3d 831 (2010), with *Thompson* v. *Commissioner of Correction*, 91 Conn. App. 205, 215–16, 880 A.2d 965 (2005) (upon concluding that petitioner demonstrated that he had not been elusive, reviewing court applied *Crawford* burden shifting inquiry within *Strickland* context and determined that, had petitioner filed motion to dismiss, reasonable probability existed that trial court would have dismissed failure to appear charge), appeal dismissed, 280 Conn. 509, 909 A.2d 946 (2006).

B

We next summarize the new evidence and testimony presented at the third habeas trial and the habeas court's findings regarding that new evidence. The petitioner produced three new pieces of documentary evidence and new testimony at the third habeas trial that he contends demonstrate that the police failed to exercise reasonable diligence in executing the warrant and that Cosgrove's and McIntyre's performances were deficient. We first discuss the new documentary evidence, exhibits 22, 23, and 30. Briefly, exhibits 22 and 23 are notices posted on national law enforcement databases after the warrant was made extraditable; exhibit 30 is the arrest warrant service record form that the New Milford police had on file for the petitioner. We discuss each of the exhibits in turn.

1

Exhibits 22 and 23 are printouts of entries into the NCIC database. The New Milford police entered exhibit 22 into the NCIC database on November 16, 2006, about one week after the warrant was made extraditable. The entry indicates that it modifies the information pertaining to the "wanted person" who is the subject of the entry, then identifies the petitioner by name, lists the offenses charged in the warrant, and identifies his address as 120 Berry Street in Greenfield, Indiana. The

warrant is expressly designated in the entry as "extraditable." Exhibit 23 comprises two entries into the NCIC database made by the United States Marshals Service in Indianapolis on November 20, 2006. The two entries were logged into the database nine minutes apart and set forth virtually identical information. Specifically, both provide that "full extradition" had been authorized "unless otherwise noted" in a field reserved for miscellaneous remarks.[8] In the miscellaneous remarks field, both entries noted that Connecticut "will extradite from any location" and named Mullin as the contact person.

Both Crossland and McIntyre testified that, although they had seen these documents, they decided not to introduce them into evidence. Crossland testified that he viewed exhibit 22 as duplicative of other pieces of evidence that he had introduced during the first habeas trial and that he did not "see the value of saying the same thing a third or fourth time." McIntyre concurred in Crossland's evaluation of exhibit 22 and stated that, rather than introduce it into evidence in the second habeas trial, he had decided to rely on the evidence adduced by Crossland in the first trial. As to exhibit 23, Crossland explained that he viewed the entry as potentially confusing because, rather than simply stating that full extradition had been authorized, it added the qualification, "unless otherwise noted in the MIS field." McIntyre was not asked why he decided not to introduce exhibit 23 into evidence.

The petitioner contended that exhibit 22 demonstrated that, had his warrant been made extraditable at an earlier time, he would have been apprehended and extradited sooner. The habeas court, however,

---

[8] The entry identified the field as the "MIS field," which is the field reserved in the NCIC database for "miscellaneous remarks." See appendix_c_ncic _abbreviations_final.pdf (last visited August 20, 2025).

found this exhibit to be duplicative of evidence presented in support of the first petition. The court considered the significance of exhibit 22 in conjunction with exhibit 20, the July 7, 2005 entry posted in the NCIC database by the New Milford Police Department, which listed the warrant as nonextraditable. That is, the court reasoned, exhibit 22, when compared with exhibit 20, merely demonstrates that, shortly after the warrant was made extraditable, the NCIC database was updated accordingly. That same proposition, however, had been proven through different evidence presented in the first two habeas trials. That evidence included the July 7, 2005 NCIC entry, which was introduced as a full exhibit in the first two habeas trials, and demonstrated that the warrant initially was nonextraditable. The court noted that other relevant evidence introduced in the first two trials included: Shepack's November 8, 2006 letter authorizing the extradition of the petitioner from anywhere within the continental United States; two December 11, 2006 entries posted in the law enforcement telecommunications system by the Huntsville, Alabama police department, the first inquiring as to whether the warrant remained active, and the second informing the New Milford Police Department that the petitioner had been arrested as a fugitive from justice; a December 11, 2006 facsimile cover page from the New Milford Police Department to the Huntsville Police Department noting that extradition authorization and a copy of the arrest warrant were attached; and a December 11, 2006 entry in the NCIC database by the Huntsville Police Department indicating that the petitioner had been located and noting that full extradition had been authorized.

In light of this evidence introduced in the prior habeas trials, the habeas court concluded that exhibit 22 offered nothing new in support of the petitioner's argument. The evidence adduced at the prior habeas trials,

the court explained, demonstrated that the warrant was not made extraditable until November, 2006, approximately sixteen months after the warrant was issued, and that the petitioner was located and arrested soon thereafter.

With respect to exhibit 23, the two November 20, 2006 entries posted in the NCIC database by the United States Marshals Service in Indiana indicating that the warrant was extraditable, the habeas court rejected the petitioner's arguments that this evidence would undermine Mullin's testimony that he had communicated previously with the United States Marshals Service regarding this case and that the exhibit also would prove that the New Milford Police Department failed to exercise due diligence in executing the warrant. The court concluded that exhibit 23 had little value and demonstrated simply that the United States Marshals Service was informing the New Milford Police Department of its awareness that the warrant was now extraditable.

2

The third piece of new evidence introduced at the habeas trial was exhibit 30, an arrest warrant service record form relating to the petitioner. The headings on the form list the petitioner's case number, specify the date the warrant was logged into the system, and identify Mullin as the officer assigned to the case. The remainder of the form, which includes spaces for officers to log attempts to serve the warrant, is blank. The petitioner argued that this exhibit would have demonstrated that the New Milford police failed to make any efforts to execute the warrant.

Crossland testified that Mullin had provided him with the arrest warrant service record during the first habeas trial, but Crossland had decided not to use it because he was concerned that the document was a "gimmick" or a "poison pill . . . ." McIntyre determined not to

offer the document into evidence, believing that it lacked "value" because it was unsigned and gave no indication of when it was created or by whom. Although he admitted that, if used in conjunction with the absence of any documentary evidence of any contacts with the United States Marshals Service, the document could have been useful to prove that there were no such contacts, he emphasized that, in his view, the blank record proved, at most, a failure to document attempts to serve the warrant, not a failure to make such attempts. Given the ambiguity of the blank form, McIntyre was concerned that, if he had attempted to present it as evidence, he would be faced with a "trial within the trial" over its meaning and significance.

Mullin also offered testimony regarding the arrest warrant service record. He acknowledged that the form reflected that the warrant was logged into the system on July 7, 2005, and that the form's purpose was to keep track of attempts to serve the warrant. He could not recall, however, whether he had made any attempts to serve the warrant, or when he had learned that the petitioner was living out of state. Moreover, his testimony as to whether an attempt to serve the warrant on the petitioner outside the state of Connecticut would be entered into the warrant service record was equivocal. He first stated that it would not be entered, but then suggested that, under certain circumstances, such an attempt might be logged on the form. He then stated that only local attempts would be logged on the form.

In response to this court's May 29, 2025 remand order, requesting that the habeas court clarify whether it credited Mullin's testimony that only local attempts to serve the warrant would be logged on the warrant service record, the habeas court did not find it "to be either credible or not credible." The court cited to the twenty-three years that had passed between the relevant events and Mullin's testimony at the time of the third habeas

trial, noted that Mullin's recollection had to be refreshed several times during his testimony, and, finally, noted the equivocal nature of Mullin's testimony.

Notwithstanding the habeas court's understandable difficulty in determining whether to credit Mullin's testimony, it is significant that the court nonetheless made the factual finding that the arrest warrant service record is intended to log "*all* attempts made to serve a warrant . . . ." (Emphasis in original.) That factual finding renders immaterial the court's inability to determine whether to credit Mullin's testimony that the record was used to log only local attempts.

The habeas court further determined that the arrest warrant service record was a "significant document that should have been introduced at the prior habeas trial by [McIntyre] and, had he introduced it, there is a reasonable probability that, combined with all the other evidence, he would have been able to show that the state would not have been unable to prove that the delay was reasonable." The court explained: "The warrant service record is a document that exists for precisely one reason: to document any attempts made to serve a warrant. In [the petitioner's] case, it is completely blank. At the prior habeas trials, Mullin was asked to bring the police department's file pertaining to [the petitioner], which he did, and to produce from that file any documentation to support his testimony that he made attempts to locate [the petitioner] in order to serve the warrant. There were no documents in his file recording any efforts made between July 6, 2005, and November 8, 2006, nor was there documentation of any communications with the [United States Marshals Service]. Mullin testified that he was aware, as of the day after the warrant was signed, of [the petitioner's] address in Indiana. Yet the only evidence of any attempt made by Mullin to serve the warrant is his testimony of unspecified attempts to contact the [United States

Marshals Service] at times unknown, that are not documented in any fashion." On the basis of these facts, the court concluded that, in light of the blank arrest warrant service record, the evidence did not demonstrate that the state had exercised due diligence by undertaking efforts to execute the warrant " 'by persevering application' . . . ." (Emphasis omitted.) See *State* v. *Freeman*, supra, 344 Conn. 519.

In response to this court's May 29, 2025 remand order, the habeas court found that McIntyre's decision not to introduce the arrest warrant service record was not objectively reasonable. McIntyre's proffered basis for his decision, that the record was unsigned, not filled out, and it was unknown whether it had been brought to the attention of any detective, did not provide a reasonable explanation for his decision. The arrest warrant service record, the court found, "which is meant to log *all* attempts made to serve a warrant, is blank. Introducing the document can only help [the petitioner] establish that the state did not attempt to serve the warrant with due diligence and without unreasonable delay. Indeed, it serves to establish that the police *made no attempts at all* to serve the warrant. [McIntyre's] argument that the [record] 'might only establish that the police did not record attempts to serve the warrant' also fails because that was precisely already the state's argument: that they did attempt to serve the warrant despite scant to no evidence to support that position. Failing to introduce that document falls below the standard of a reasonably competent defense attorney." (Emphasis in original.)

3

The petitioner also presented the expert testimony of Riccio. Riccio testified that, as of the time of the habeas trial, he had been practicing as a criminal defense attorney for twenty-four years and that he had

testified as a legal expert on approximately twenty-five occasions. Over the course of his career, he had encountered issues involving an unreasonable delay in executing a warrant at least ten times. He testified that the primary means by which defendants challenge the delayed execution of a warrant is to file a motion to dismiss, although he acknowledged that some defendants elect to assert an affirmative or special defense. In a motion to dismiss predicated on an allegedly unreasonable delay in executing a warrant, a defendant sets forth facts in support of his initial burden to prove that he was not elusive. If the defendant carries his burden, the state then must prove the delay was reasonable by presenting evidence that it exercised due diligence in executing the warrant. If the state is unable to make that showing, the case is dismissed. Riccio testified that, pursuant to *Crawford*, a defendant need not prove "actual prejudice" as a result of the delay, such as missing witnesses. Instead, the focus is entirely on the reasonableness of the delay itself, beginning with the consideration of whether the defendant was elusive, and, if not, whether the state exercised due diligence in executing the warrant. A criminal defense attorney who fails to file a motion to dismiss when there is evidence that there has been an unreasonable delay in executing a warrant, Riccio testified, does not meet the standard of care, and failing to file such a motion would make it difficult to raise the issue on appeal. In a case such as the present one, in which the police were aware that the petitioner was living openly in another state but waited more than one year to execute the warrant, which was marked nonextraditable for the majority of that time period, Riccio testified, the standard of care would require filing a motion to dismiss predicated on *Crawford*.

The habeas court credited Riccio's testimony that "reasonably competent criminal defense attorneys

would have raised this clear statute of limitations issue in the trial court." The court did not, however, view the testimony, "which is expert opinion testimony, as the kind of evidence needed for this court to conclude differently than" this court did in *Roger B. II*. The habeas court reasoned that this court, "[f]aced with this exact record," had concluded that Cosgrove did not perform deficiently; the habeas court therefore considered itself bound by this court's holding in *Roger B. II*.

C

In light of the habeas court's findings regarding the new evidence and testimony presented at the third habeas trial, we now consider whether the petitioner established both prongs of *Strickland* as to Cosgrove and McIntyre. As we stated in part I of this opinion, the habeas court properly concluded that, in the absence of new evidence, it was bound by this court's holding in *Roger B. II* that the petitioner had failed to demonstrate that Cosgrove's failure to raise the state's delay in executing the warrant constituted ineffective assistance of counsel. We part ways with the habeas court, however, as to whether the petitioner accomplished that task in the third habeas trial. As we explain, we conclude that, given the habeas court's underlying factual findings regarding the warrant service record and the expert testimony introduced by the petitioner, he established both deficient performance and prejudice as to Cosgrove and McIntyre. We discuss each of these in turn.

1

The blank warrant service record is relevant to our consideration of *Strickland*'s prejudice prong and to our consideration of whether McIntyre's performance was deficient. Standing alone, the blank form would raise some questions concerning whether the New Milford police made any attempts to execute the arrest

warrant. Considered in conjunction with the other evidence adduced at the habeas trial (i.e., evidence that supported the petitioner's claim that the New Milford police failed to make any significant effort to execute the warrant), the production of the blank warrant service record satisfies the petitioner's burden to demonstrate prejudice.

The habeas court's factual findings aptly capture the necessary context for this determination. We begin with the most basic finding—that eighteen months passed between the issuance of the warrant, two weeks prior to the expiration of the statute of limitations, and its execution. Of course, the passage of time, while relevant, is not dispositive as to whether the police failed to exercise due diligence in serving a warrant. Both this court and our Supreme Court have emphasized that there is no "per se approach as to what period of time to execute an arrest warrant is reasonable." *State* v. *Crawford*, supra, 202 Conn. 451; see also *State* v. *Soldi*, 92 Conn. App. 849, 856, 887 A.2d 436 (noting absence of per se approach in context of considering whether five year delay in serving defendant with arrest warrant was reasonable), cert. denied, 277 Conn. 913, 895 A.2d 792 (2006). The more pertinent inquiry is—what transpired during that time period? That is, in determining whether a habeas petitioner has demonstrated a reasonable probability that the state would be unable to demonstrate that the delay in executing the warrant was reasonable, courts must consider "whether the defendant may have been difficult to apprehend" during the relevant time period, and "the police department's actions in executing the warrant." *State* v. *Woodtke*, supra, 130 Conn. App. 744. We turn to these two factors.

Without question, even given the petitioner's showing that he was not elusive, his relocation to Indiana five

months after Mullin questioned him, as well as his subsequent relocations within that state and then to Alabama, are relevant to the inquiry insofar as those relocations may demonstrate that the petitioner may have been difficult to apprehend. *Crawford* and its progeny recognize the significance of a wanted person's relocation in evaluating the reasonableness of the state's efforts to execute a warrant. See, e.g., *State* v. *Ali*, 233 Conn. 403, 415, 660 A.2d 337 (1995) (recognizing relevance of relocation by accused in determining whether police efforts in executing arrest warrant were reasonable); *State* v. *Crawford*, supra, 202 Conn. 451 (same). That significance is diminished, however, by the fact that the New Milford police received notice on July 7, 2005—the day after the warrant issued—that the petitioner lived at 120 Berry Street in Greenfield, Indiana. Indeed, locating the petitioner appears not to have been the problem. At the petitioner's criminal trial, Mullin acknowledged that he independently had been able to locate the petitioner through Indiana's motor vehicle records.

Another factor that minimizes the significance of the petitioner's relocation outside Connecticut is that he was located and apprehended within two months after the warrant was made extraditable, despite the fact that, by that time, he had moved from Indiana to Alabama. The quick turnaround after the warrant was made extraditable must be understood in conjunction with the trial court's finding that, with respect to a wanted person who is located outside the jurisdiction of Connecticut, designating a warrant as extraditable allows Connecticut law enforcement to "receive cooperation of [out-of-state] local law enforcement, take that individual into custody, and begin extradition proceedings to Connecticut." Consistent with the court's finding, that is precisely what happened in the present case—

as soon as the warrant was made extraditable, out-of-state local law enforcement acted on it. Specifically, the multiple entries in the NCIC database shortly after it was updated to reflect the change in the warrant's status—by both the United States Marshals Service and the police department of Huntsville, Alabama—indicate that the reason for the lack of prior efforts on the part of out-of-state law enforcement was the failure to designate the warrant as extraditable.

The actions undertaken by the New Milford police in executing the warrant were at best minimal. The record reveals that designating a warrant as extraditable does not require significant time or effort on the part of law enforcement. Mullin testified that, once the target of a warrant is determined to be living outside this jurisdiction, the police contact the state's attorney's office to have the warrant made extraditable and then update the NCIC database accordingly. Consistent with that testimony, the warrant for the petitioner's arrest was made extraditable by virtue of a single sentence letter sent by Shepack to Mullin on November 8, 2006, stating: "Please be advised that the [s]tate of Connecticut authorizes extradition of [the petitioner] . . . from any location within the continental United States." And the decision to designate a warrant as extraditable, Shepack testified, ordinarily "should be made within hours." In the present case, that decision was made sixteen months after the warrant issued, despite the fact that the New Milford police learned, one day later, the particular street address where the petitioner lived in Indiana. Although it is true that the petitioner subsequently relocated within Indiana, and then to Alabama, it was undisputed that the New Milford police were aware that he lived outside this jurisdiction and that he had a driver's license in Indiana under his name and used his Social Security number to obtain employment. At no point during any of the three habeas trials or the

criminal trial, however, was any evidence presented providing an explanation for the failure to make the warrant extraditable during those sixteen months.

Evidence of other efforts to execute the warrant, of course, would be relevant to our consideration of whether the police exercised due diligence. Mullin's testimony at the criminal trial and the habeas trials suggested that, notwithstanding his failure to have the warrant made extraditable, he had been in communication with the United States Marshals Service, and it had unsuccessfully attempted to serve the warrant on the petitioner in Indiana. His testimony, in fact, was the sole evidence presented that any attempts had been made to serve the warrant on the petitioner prior to November, 2006. The habeas court aptly described Mullin's testimony, however, as vague—he provided no names, no times or dates, locations, and no documentation of any of the alleged communications with the United States Marshals Service.

The blank arrest warrant service record, which the habeas court expressly found had one purpose—i.e., it was intended to document *all* attempts to serve the warrant on the petitioner—provides a devastating counterpoint to Mullin's vague and unsupported testimony regarding efforts to execute the warrant prior to November, 2006. This record is precisely the type of evidence that evinces the "nonchalance" that our Supreme Court deemed the opposite of the " 'persevering application' " required to support a conclusion that law enforcement exercised due diligence in executing a warrant. *State* v. *Freeman*, supra, 344 Conn. 519. As we stated, this document alone would not have sufficed to demonstrate prejudice. We view it, however, in light of the failure of the New Milford police to designate the warrant as extraditable, a task that easily could have been accomplished soon after the warrant's issuance; the fact that the petitioner's street address was known to

the police one day after the warrant was issued; the evidence that the petitioner used his own name and Social Security number to obtain a driver's license and employment; and the absence of any documentary evidence demonstrating that the New Milford police made any efforts, prior to November, 2006, to execute the warrant. Considered in this context, the blank warrant service record leaves no question that, in the present case, the police did not exercise due diligence in executing the warrant without unreasonable delay. Accordingly, we conclude that the petitioner has demonstrated that he was prejudiced by McIntyre's failure to introduce the warrant service record during the second habeas trial, and that he was prejudiced by Cosgrove's failure to rely at the criminal trial on the delay in executing the warrant.

Given the significance of this document, we agree with the conclusion of the habeas court that McIntyre's proffered reasons for not introducing it—that it was unsigned, not filled out, and it was unknown whether it had been brought to the attention of any detective— were not reasonable. The reason the warrant service record provides significant support for the petitioner's position is precisely *because* it is not filled out. As the habeas court explained, the warrant service record would have helped to "establish that the state did not attempt to serve the warrant with due diligence and without unreasonable delay. Indeed, it serves to establish that the police made no attempts at all to serve the warrant." (Emphasis omitted.) This document would have undermined the credibility of Mullin's uncorroborated and vague testimony regarding attempts to execute the warrant. We agree with the habeas court that failing to introduce it was objectively unreasonable.

2

Riccio's testimony provides precisely the piece of evidence that this court observed in *Roger B*. v. *Commissioner of Correction*, supra, 190 Conn. App. 852,

was lacking in support of the claim in the petitioner's first habeas petition that Cosgrove rendered deficient performance by failing to file a motion to dismiss or to assert an affirmative defense based on the delay in executing the warrant. Two aspects of Riccio's testimony are key to our conclusion that the petitioner satisfied his burden to prove that Cosgrove's performance was deficient. First, his testimony made clear that the primary means by which a delay in executing a warrant would be challenged would be by way of a motion to dismiss. Considering that such a motion would be filed outside the presence of a jury, the worst that could have happened to the petitioner is that Cosgrove would not have prevailed on the motion. In other words, the petitioner could not have suffered any prejudice had Cosgrove filed a motion to dismiss. Indeed, as Riccio testified, failing to file a motion to dismiss precluded the petitioner from raising a claim challenging a denial of that motion in the direct appeal.

In fact, Cosgrove offered no strategic reason for failing to file a motion to dismiss and only stated that he believed he did not have a basis for filing one. Riccio's testimony reveals the key flaw in that rationale. His testimony highlighted that Cosgrove was relying on an incorrect legal rule when he concluded that, because he could not demonstrate actual prejudice resulting from the delay, such as missing witnesses or destroyed evidence, he had no basis for filing a motion to dismiss. Ricco correctly testified that, when the issue is whether a state's delay in executing a warrant beyond the applicable limitations period was unreasonable, a defendant need not demonstrate actual prejudice. Cosgrove's belief that he would have to make that showing reflects an incorrect understanding of the required showing of prejudice under *State* v. *Crawford*, supra, 202 Conn. 450–51, in which our Supreme Court set forth the applicable principles that govern a defendant's claim that

the state has executed a warrant outside the statute of limitations. Specifically, under *Crawford* and its progeny, the prejudice to a defendant is having to defend a criminal action that the state lacked authority to bring. See *Thompson* v. *Commissioner of Correction*, supra, 91 Conn. App. 216 (petitioner satisfied burden to show prejudice by demonstrating reasonable probability that, if trial counsel had filed motion to dismiss based on delay in executing warrant, motion would have been granted). Accordingly, Riccio's testimony demonstrated that Cosgrove misunderstood the applicable law and failed to file a motion to dismiss despite the absence of any prejudice that would have inured to the petitioner had Cosgrove done so. We therefore agree with the habeas court's conclusion that a reasonably competent attorney "would have raised this clear statute of limitations issue in the trial court." Therefore, we conclude that the petitioner demonstrated that Cosgrove's performance was deficient.

The judgment is reversed and the case is remanded with direction to grant the second amended petition for a writ of habeas corpus, to vacate the petitioner's underlying conviction of sexual assault in the first degree, sexual assault in the fourth degree, and risk of injury to a child, and to order a new trial.

In this opinion the other judges concurred.